(No. 12409.—Reversed and remanded.)

MARTIN JANCI *et al.* Defendants in Error, *vs.* STEVE CERNY, Plaintiff in Error.

*Opinion filed February 20, 1919—Rehearing denied April 3, 1919.*

1. DEBTOR AND CREDITOR—*what constitutes accord and satisfaction of a claim.* The payment of a part, only, of a debt which is due and the amount of which is certain, will not satisfy the debt, but where there is a dispute in good faith as to the amount due a payment by the debtor of the amount admitted to be due in full settlement, if accepted by the creditor, is a satifaction of his claim.

2. PARTNERSHIP—*partners cannot complain of settlement made with full knowledge of material facts.* The facts that a partnership settlement was made on a wrong basis, that certain partners received in the settlement amounts considerably less than they were entitled to, and that they lacked information as to the legal rules which should govern settlements, are not sufficient reasons for disregarding the settlement if they had full knowledge of the material facts necessary to make a full settlement.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FREDERICK A. SMITH, Judge, presiding.

SINDEN, HASSELL & OSUSKY, (JOHN H. MCAULIFFE, of counsel,) for plaintiff in error.

MAX LUSTER, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Martin Janci and Stefan Palansky brought suit in the circuit court of Cook county against Steve Cerny and John Cerny for the settlement of their partnership accounts. The bill alleged the formation of a partnership by the complainants and the defendants for the business of wool-pulling, and that Steve Cerny had wrongfully used the funds of the partnership in speculative ventures in wool with John

Svatik without the knowledge or consent of the complainants; that such speculation was not included in the purpose for which the partnership was formed, was not a part of the business of the partnership and was entirely disconnected with its proper purposes, but that it was profitable and resulted in profits in excess of $5000, for which Steve Cerny should account to the partnership. Steve Cerny answered the bill, denying most of the material allegations, among them the allegation of the formation of the partnership, and averred that the complainants and the defendants entered into an agreement to purchase one lot of material for the production of wool, which was purchased with money contributed by the respective parties; that it was agreed that the material was to be worked into a finished product and a merchantable condition, and the profits, if any, were to be divided equally among the four parties and each party was to receive back the money which he had contributed; that material was purchased, placed in a merchantable condition and sold at a profit, and that after the sale the defendant Steve Cerny accounted to each of the parties and paid to them the amount found due in full satisfaction and accord of the transaction, and that this transaction is the only one which he had with the parties to the suit; that he did not use the money or property of the joint enterprise for any other purpose than that for which it was contributed, and that his transactions with John Svatik were separate and distinct from any transaction in which the complainants are in any way involved. The cause was referred to a master, whose findings were in favor of the complainants. A decree was entered in favor of the complainants, from which the defendant Steve Cerny appealed to the Appellate Court for the First District, where the judgment was affirmed and a writ of *certiorari* was awarded to bring up the record for review.

The material facts as shown by the evidence and found by the court are, that about August 1, 1916, the parties

formed a partnership for the purpose of buying skins and removing the wool from them and afterwards selling the wool and skins and using the proceeds for further operations of the same kind for the benefit of the partnership; that it was agreed that each of the partners should contribute to the partnership as much money as he could; that Steve Cerny should have charge of the business and the wool should stand in his name, and the profits or losses should be divided equally among the partners without regard to the amounts they had contributed; that Steve and John Cerny should begin working for the partnership and receive the usual wages for their work but that Janci should continue working in the machine shop where he was employed, Steve Cerny being skilled in the work and Palansky and John Cerny having previously worked at pulling wool but Janci having no experience in such work. Janci contributed $1050, Palansky $500, John Cerny $500 and Steve Cerny $51.77 to the funds of the partnership; that Steve Cerny, acting for the partnership, purchased a lot of lamb skins from Stefan Makys, of the purchase price for which, after certain credits for the return of the skins after pulling the wool from them and for certain work for Makys, there remained due a balance of $2101.77, which was paid with the partnership funds. Steve Cerny, Palansky and John Cerny, together with the other workmen, completed the removing of the wool from the skins in five or six days, and the wool was then deposited with the National Wool Company and warehouse receipts were issued for it to Steve Cerny. While the Cernys and Palansky were working on the skins John Svatik engaged Steve Cerny as a foreman or superintendent for him in the wool-pulling business and agreed to give him a share of the profits in addition to the usual wages on the work. Steve Cerny's partners were not parties to this arrangement and he said nothing to Janci about it, but said to Palansky that they would go to work for Svatik because he promised Cerny

a percentage. Steve Cerny, Palansky and John Cerny worked for Svatik for about two months and received the usual wages for the work done by them, and after the arrangement with Svatik, Steve Cerny paid no further attention to the partnership until the wool belonging to the partnership was sold in the following December. Two or three weeks after making the arrangement with Svatik, Steve Cerny turned over to Svatik $1300 furnished by John Cerny, which was used by Svatik in his business and was afterwards returned to Steve Cerny without the payment of any interest or compensation for its use, and about August 14, 1916, Steve Cerny delivered to Svatik the warehouse receipts for the wool belonging to the partnership, which Svatik pledged to secure a loan of about $2000 made to him by the Security Bank of Chicago, the warehouse receipts remaining so pledged until the wool for which they were issued was sold. The wool belonging to the partnership was sold on December 8, 1916, at a profit of $182.88. Svatik also sold his wool at about the same date, and paid Steve Cerny, on account of his portion of the profits under their arrangement, $5000 about December 16, 1916, and the further sum of $524.78 about February 7, 1917.

The defendants in error base their claim for relief on the charge that while in partnership with the complainants Steve Cerny secretly used the funds of the partnership and acquired secret profits, and the evidence sustains the conclusion that Cerny abandoned the partnership business and without the knowledge of his partners turned over the whole of the partnership property to John Svatik, to be used by Svatik in the conduct of the business in which he employed Cerny, from which Cerny derived $4000 or $5000 of profits. The plaintiff in error relies for his defense, among other things, upon an accord and satisfaction made upon a settlement with his partners and payment to them of the amount agreed upon as due.

After the payment of the $5000 to Steve Cerny, Janci and Palansky discovered that Cerny had let Svatik use the warehouse receipts for the purpose of borrowing money to use in his business, and they insisted that they were entitled to share in the profits which Cerny had received out of the arrangement with Svatik. All the partners met at Steve Cerny's house on March 18, 1917, and the question of a settlement was considered. Cerny had the bills showing the disposition that had been made of the wool of the partnership, the amount received, and the figures showing the profits which had been made and the amount which he claimed was due to each of the partners. In regard to the unauthorized use of the warehouse receipts in Svatik's business, it was figured out that $378 was made on the $2000 which Svatik borrowed on those certificates. This amount Cerny proposed to divide into five parts, giving two to Janci because he had contributed twice as much money as the others and one to each of the other partners,—that is, $75.60 to the three except Janci, who received $151.20. Cerny had already paid Palansky for the amount of money that he had contributed and the profit on the wool sold, and he proposed to give him a check for $75.60 for his share of the profits for the use of the $2000, and a check for $1515.96 to Janci in payment of the $1050 which he had contributed to the partnership, $45.72 profit on the wool sold, $151.20 for the use of the $2000, and the remainder on a previous transaction between himself and Janci not connected with the partnership. As it was Sunday the checks were not then delivered, but the next day Palansky came and got his check, $75.60, and two or three days later Janci came and got his check, $1515.96.

In regard to the question of accord and satisfaction the findings of the circuit court were as follows: "That said Steve Cerny has accounted to the complainants for the profits earned on the aforesaid wool purchased from Ste-

fan Makys in August, 1916, but has not accounted to said complainants, as his partners, for any portion of the aforesaid sum of $5524.78 received by him as a share of the profits earned by the aforesaid John Svatik under the aforesaid arrangement made between said Steve Cerny and said John Svatik in August, 1916, except that on or about the 18th day of March, A. D. 1917, said Steve Cerny attempted to account to said complainants for the use by said John Svatik of the aforesaid warehouse receipts; that said Steve Cerny attempted to make said last mentioned accounting on the basis that inasmuch as said John Svatik had borrowed the sum of $2000 on said warehouse receipts and used the same in his business operations, which said Steve Cerny represented to amount to the sum of $90,000, said $2000 being thus one-forty-fifth (1/45) part of said $90,-000, and inasmuch as the total profits of said John Svatik, as represented by said Steve Cerny, amounted to $17,000, therefore the members of the aforesaid partnership were entitled to one-forty-fifth (1/45) of said sum of $17,000, amounting to approximately the sum of $378, which sum was by said Steve Cerny divided into five parts, of which the complainant Janci received two parts, or $151.20, and the complainant Palansky the sum of $75.60, such sums being based on the amount of money contributed by said complainants, respectively, to the capital of the aforesaid partnership; that said last mentioned accounting with reference to the use of the warehouse receipts, as aforesaid, was based only upon the aforesaid representations and figures furnished by the said Steve Cerny, and at the time of such accounting there was no full and complete disclosure of the business operations of John Svatik in which said warehouse receipts were used; that the complainant Palansky, on or about February 18, 1917, received from Steve Cerny the amount of money paid in to the partnership by him, together with his share of the profits on the aforesaid wool purchased from Stefan Makys in August, 1916, and

the complainant Janci, on or about March 21, 1917, also received from Steve Cerny the amount of money paid in to the partnership by him, together with his share of the profits on said wool purchased from Stefan Makys in August, 1916, and that the complainant Janci on or about March 21, 1917, received from Steve Cerny the aforesaid sum of $151.20, and the complainant Palansky on or about March 19, 1917, received from Steve Cerny the aforesaid sum of $75.60 on account of the use of the aforesaid warehouse receipts by John Svatik, as aforesaid."

The acceptance by a creditor of payment of an amount which the debtor claims to be the full amount due and tenders in settlement of the demand constitutes an accord and satisfaction. The defendants in error, however, insist that an attempt to settle between partners where there is not a full disclosure is not an accord and satisfaction, and that Cerny failed to make full disclosure of all his acts regarding the partnership assets. The circuit court found that there was no full and complete disclosure of the business operations of John Svatik in which the warehouse receipts were used. No such disclosure is made in the record and no such disclosure was necessary to a settlement of the accounts of the partnership. If Steve Cerny was under obligation to account to his partners for the profits arising out of his transaction with Svatik, the amount for which he was required to account was the amount of profits which he had received, and the disclosure of the business operations of Svatik would not have thrown any light on that question. There was no doubt as to the amount of profits which he had received. There was no fact which he could have disclosed material to the settlement of the accounts which was not known to his partners. They knew that he had engaged in business with Svatik, that he had permitted the use of the partnership funds in that business, that he had received profits and the amount of the profits. All the facts necessary to a settlement were within their

knowledge. They say that they did not then understand the figures, but there was no evidence of any attempt to conceal anything from them, no evidence that they were not fully aware of everything material to the settlement, and there was no peculiar intricacy in the accounts. After going away for a day or two they came back and accepted the checks without expressing dissatisfaction and two or three days afterward began this suit. They knew when they accepted the checks that they represented the whole amount which Steve Cerny admitted to be due them and that they were given to them in full payment of their demands against him. The payment of a part, only, of a debt which is due and the amount of which is certain will not satisfy the whole debt, but where there is a dispute in good faith as to amount due, a payment by the debtor of the amount admitted to be due, in full settlement, if accepted by the creditor, is a satisfaction of his claim. (*Ostrander* v. *Scott,* 161 Ill. 339; *Lapp* v. *Smith,* 183 id. 179; *Canton Union Coal Co.* v. *Parlin & Orendorff Co.* 215 id. 244; *Snow* v. *Griesheimer,* 220 id. 106.) The fact that the settlement was made on the wrong basis or that the defendants in error received in the settlement amounts considerably less than they were entitled to, and the lack of information as to the legal rules which should govern settlements, are not sufficient reasons for disregarding the settlement made with full knowledge of the facts. Upon the evidence the decree should have been in favor of the defendants.

The judgment of the Appellate Court and the decree of the circuit court will be reversed and the cause will be remanded to the circuit court, with directions to dismiss the bill.          *Reversed and remanded, with directions.*