Marion Vece (a/k/a Marianne Vece), Plaintiff-Appellee, v. Carl De Biase, Executor Under the Instrument Purporting to Be the Last Will and Testament of John Mackenzie, Deceased, Defendant-Appellant, Homer A. Nixon and Mary E. Nixon, etc., et al., Defendants-Appellants.

Gen. No. 49,007.

First District, First Division.

February 10, 1964.

Rehearing denied March 16, 1964.

248

Arthur Abraham, and Goldberg and Goldberg, all of Chicago, for appellant, Carl De Biase.

Raymond L. Jones, of Chicago, for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The controversy at bar arose out of a proceeding to contest the will of John Mackenzie brought by Marion Vece, a niece of the deceased. The action which was brought against Carl De Biase, Executor, and Homer A. Nixon and Mary E. Nixon, the principal beneficiaries, was based on allegations that the will of the decedent was invalid, due to the testator's mental incapacity and the undue influence and fraud which

had been exerted by the principal beneficiaries. After the matter was set for hearing the contestant filed a petition to enforce an oral agreement to settle the case which she alleged had been entered into by her and the Nixons. The Chancellor ordered the Executor to pay the plaintiff the sum of $10,000 from the distributive share of the principal beneficiaries. From this order the Executor appeals.

The settlement agreement upon which plaintiff bases her claim was the result of a long series of negotiations between her counsel, Raymond L. Jones and counsel for the Nixons, Julius Gross. In her sworn petition filed on July 25, 1962, the plaintiff alleged that the cause was reached for trial as a jury case on May 16, 1962. Judge Eovaldi then inquired whether the matter could be amicably settled before trial and after a discussion and an attempt to reach an agreement, the trial was continued to May 23rd. Between these two dates the attorneys for the parties in a telephone conversation settled on the figure of $10,000 which they represented as being acceptable to their respective clients. Gross stated that it would be necessary for him to file a petition in the Probate Court for the purpose of authorizing payment to plaintiff. Jones agreed and said that he would request a continuance of the case on May 23rd to complete the settlement.

At this point the Executor made his first appearance in the case when on May 23rd, his attorneys being present, the cause was again called for trial. Messrs. Jones and Gross informed the court that the matter was settled and the case was continued to June 26th for settlement. On May 24th, one of Executor's attorneys informed Mr. Jones that the settlement made by the Nixons was to be paid by them and not out of the assets of the estate. On June 26th, when the case was

called, Mr. Guidarelli, co-counsel with Gross, informed Judge Eovaldi that the Internal Revenue Service had filed, or was about to file, a claim against the estate for about $460,000 for income taxes, interest and penalties and that the total assets of the estate were approximately $130,000 and therefore the offer to settle by the Nixons was withdrawn and they were ready for trial. Whereupon, the plaintiff prayed that a judgment be entered pursuant to the settlement agreement in the sum of $10,000, to be paid from the distributive shares of the Nixons.

Although many interesting points of law have been raised in the briefs submitted by both parties we feel that we need go little beyond the obvious in order to discover the issues upon which our decision must rest. The appellant contends that conversations and correspondence between the attorneys for the plaintiff and the Nixons could only constitute negotiations and did not result in a final settlement contract.

Without prolonging this opinion unduly, it must be pointed out that when the parties were ready to proceed with the jury trial, it was the Chancellor who, in the first instance, suggested to the parties that they make an attempt to settle the controversy amicably. The compromise and settlement of disputed claims are encouraged and favored by the courts. 11 ILP § 2 Compromise and Settlement. It is true that the negotiations which were carried on in good faith by the attorneys resulted in an oral agreement between them which evidently had the approval of their respective clients. It is likewise true that the Nixons' refusal to carry out the terms of the oral agreement arrived at by their attorneys was based solely upon the changed conditions brought about by the government tax claim. When the Nixons learned of the government tax claim they felt they had made a material mistake of fact and

251

were not in the same bargaining position as they had been at the beginning of their talks. We find this feeling understandable.

█ It is common knoweldge that oral settlements in tort cases are frequently agreed upon prior to trial and if either party changes his mind the prior agreement is not considered final or concluded until either a judgment has been entered or a disposition of the case has been an accomplished fact and releases have been signed. Even when a contract has actually been entered into, a court of equity may rescind the agreement at the request of one party who entered into it, without negligence, through a material mistake of fact, when it can do so without injustice to the other party. Steinmeyer v. Schroeppel, 226 Ill 9, 80 NE 564. The facts concerning which the mistake was made must be material to the transaction and affect its substance and must not result from the want of diligence as would be exercised by persons of reasonable prudence under the same circumstances. Winkelman v. Erwin, 333 Ill 636, 165 NE 205.

We conclude that the Nixons merely chose to withdraw from the settlement agreement at a time when such an action was within their legal rights. In addition to the reasons set out above, the Nixons were free to withdraw their offer since the proposed settlement agreement was made expressly contingent upon the approval of the Probate Court, the approval of which was never obtained, and furthermore the Executor was justified in refusing to pay over the $10,000, if for no other reason than that the payment of the agreed amount was to be paid by the Nixons and not out of the assets of the estate as provided in the decree.

We conclude, under the facts and circumstances, that the decree entered in the Circuit Court enforcing the settlement agreement made between the Nixons and the plaintiffs, prior to the trial, was erroneous.

252

In view of our findings the Executor was justified in refusing to pay over to the plaintiff $10,000 from the distributive share of the Nixons as per the order of the Court. In view of the fact that we have determined the appeal on the merits we do not deem the other questions raised in this appeal of sufficient importance to consider. The Decretal Order of the Circuit Court is therefore reversed and the cause is remanded for trial.

Reversed and remanded with directions.

MURPHY, P. J. and KLUCZYNSKI, J., concur.