SHEFFIELD POLY-GLAZ, INC., Plaintiff-Appellee, *v.* HUMBOLDT GLASS COMPANY, Defendant-Appellee.—(B. R. ABBOT CONSTRUCTION COMPANY, Defendant-Appellant.)

First District (2nd Division)   No. 62621

Opinion filed September 28, 1976.

Donn E. Johnson, of Western Springs, for appellant.

Keck, Cushman, Mahin & Cate, of Chicago, for appellee Sheffield Poly-Glaz, Inc.

Mr. JUSTICE DOWNING delivered the opinion of the court:

B. R. Abbot Construction Company (hereinafter Abbot), appeals an order of the circuit court of Cook County granting a motion for judgment in accordance with a settlement agreement. The order dismissed the cause and also implemented an oral settlement agreement made by Abbot, Sheffield Poly-Glaz, Inc. (hereinafter plaintiff), and Humboldt Glass Company (hereinafter Humboldt).[1] The issue to be decided on appeal is whether the trial court erred in entering the above order.

The general background giving rise to the commencement of this suit is in part as follows. The Chicago Housing Authority (CHA) contracted with Abbot for a certain construction job. Abbot then contracted with

---

[1] Humboldt Glass Company filed no brief and no appearance before this court.

Humboldt for the glazing of windows required by this job. Humboldt purchased the window material from plaintiff and failed to pay plaintiff for this material. Plaintiff then placed a mechanic's lien in the amount of $9,270.05 upon funds due Abbot from CHA.

On September 5, 1972, plaintiff filed a complaint for accounting in chancery to collect on its mechanic's lien. (Ill. Rev. Stat. 1971, ch. 82, par. 23.) This complaint named Humboldt, Abbot, and CHA as defendants. CHA was ordered to pay $9,270.05 to the clerk of court, subject to further order of the trial court, and was dismissed from the suit. Plaintiff later filed an amended complaint.

Abbot's answer to the complaint and amended complaint denied that the materials supplied by plaintiff conformed to the requirements of the contract between Abbot and Humboldt. Abbot alleged the materials furnished by plaintiff were rejected by CHA and had to be replaced from other sources, at an excess cost over its contract price with Humboldt. Abbot counterclaimed against plaintiff for damages in the amount of $70,000. Abbot further alleged Humboldt never performed its duties under the contract and cross-claimed against Humboldt for breach of warranty and for defective windows and glazing, seeking damages in the amount of $70,000.

Various other allegations and denials were set forth in the pleadings involving other parties and jobs, none of which are directly pertinent to the issue now before this court.

On April 23, 1974, because of the many claims which had been filed, this matter was transferred to the law division of the circuit court of Cook County. At a pretrial in the law division, the matters giving rise to this appeal took place.

Attorneys for Abbot, Humboldt, plaintiff, and a representative of National Ben Franklin Insurance Company[2] met to discuss possible pretrial settlement of this matter. After arriving at possible settlements, the attorneys contacted the parties and explained the proposal. Counterproposals were presented. It is undisputed that on June 10, 1975, the attorneys arrived at a proposed settlement in the presence of the trial court, which was reported by each attorney to his client, and then reported back to the group. According to the attorneys, including counsel for Abbot, the proposed settlement was acceptable. The trial court then ordered the parties to draw an order to be presented the following day in order to dispose of the litigation.

However, prior to the entry of such an order, counsel for Abbot had a discussion with his client, Norman Rubin, president of Abbot, and

---

[2] During oral argument before this court, it was indicated that a representative of National Ben Franklin Insurance Company participated in the pretrial negotiations of this case and agreed to the proposed settlement which was accepted by the parties.

allegedly learned his client had not understood the terms of the settlement. Rubin allegedly believed he was to receive the $9,270.05 being held by the clerk of court, plus an additional amount of $6,000 provided for in the settlement. However, the terms of the settlement, as understood by the other parties and by counsel for Abbot, provided that the $9,270.05 was to be distributed as follows:

| Plaintiff | - | $2,270.05 |
| Abbot | - | $6,000.00 |
| Humboldt | - | $1,000.00 |

After learning of this misunderstanding between himself and his client, counsel for Abbot notified the parties and the trial court that the settlement was no longer acceptable to his client. Plaintiff moved the trial court to enter judgment in accordance with the oral settlement agreement, and attached an appendix to its motion setting forth the terms of the alleged agreement. Abbot moved to strike this motion and attached affidavits of Mr. Rubin and of counsel for Abbot, explaining the alleged misunderstanding.

After considering the briefs and arguments concerning these motions, the trial court dismissed the cause of action with prejudice and ordered performance of the settlement agreement. It ordered the $9,270.05 held by the clerk of court to be disbursed as understood by the attorneys and set out above. The order also contained many other provisions not directly pertinent to this opinion.

Commenting on this order, the trial court stated:

" [N]ot only was I present during informal discussions, I was present here when the agreement was formalized and agreed upon totally; and I don't believe there is any aspect of this Order that does not conform to my recollection and to your recollection of what exactly was the agreement.

The agreement was formalized and the only thing that wasn't done, it wasn't reduced to writing at that particular point."

The trial court denied a motion to vacate this order, but stayed its order pending appeal. Before this court there is no transcript of the pretrial discussions when the alleged oral settlement agreement was finalized. However, there is an uncertified transcript of the hearing on the motion for judgment in accordance with the alleged oral settlement, to which the parties have stipulated.

I.

■■ The controlling issue before this court is whether the trial court erred in dismissing this cause of action ordering performance of the

alleged oral settlement agreement. Despite Abbot's contention, the motion for judgment in accordance with the oral settlement agreement was properly before the trial court, which had before it sufficient information to rule on the matter. A trial court has the power, under certain circumstances, to summarily enforce a settlement agreement entered into by the parties while their suit is pending before it. See *Theatre Time Clock Co. v. Motion Picture Advertising Corp.* (E.D. La. 1971), 323 F. Supp. 172, 174; 15A C.J.S. *Compromise & Settlement* §48 (1967); *cf. Janssen Brothers, Inc. v. Northbrook Trust & Savings Bank* (2nd Dist. 1973), 12 Ill. App. 3d 840, 843, 299 N.E.2d 431.

In the case at bar, the trial court heard the pretrial negotiations of the parties and was present when the alleged oral settlement agreement was finalized. Abbot filed with the trial court affidavits of its attorney and its president explaining the alleged misunderstanding. The court also had before it briefs by each party and heard oral argument on the motion prior to issuing its order. Furthermore, neither party alleged additional information which would have been offered if the court had held a full trial on the validity of the oral settlement agreement. Abbot cannot now complain of the summary disposition of this matter when no objection was made in the trial court and this matter was not raised in Abbot's motion to vacate the order of dismissal. (*Newby v. Civil Service Com.* (1st Dist. 1976), 36 Ill. App. 3d 716, 719, 344 N.E.2d 732.) Based on the settlement agreement, the trial court properly considered the motion for judgment.

There is no dispute in this case that the terms of the settlement agreement specified in the trial court order are similar to those to which the parties agreed on June 10, 1975. Nor is there any dispute that Abbot's attorney had been authorized by Rubin, the president of Abbot, to accept the proposed settlement. Abbot's objections to the enforcement of the oral agreement are as follows: (1) it was not final; (2) there was no meeting of the minds; (3) there had been no performance; (4) the court did not have jurisdiction over all parties involved in the settlement; (5) the terms of the settlement violated the Statute of Frauds; and (6) the terms of the settlement were inequitable.

■■ Settlements are to be encouraged and given full force and effect. They should not be set aside absent a showing of fraud or mistake. (*Zamouski v. Gerrard* (2nd Dist. 1971), 1 Ill. App. 3d 890, 895, 275 N.E.2d 429.) Such agreements are recognized by the courts where they are based on sufficient consideration and the parties have met on equal terms. (11 Ill. L. & Pr. *Compromise & Settlement* §2 (1955).) A settlement based on an oral agreement may be enforced. (*Zamouski,* at 895; *Theatre Time,* at 174.) These agreements are binding so long as there is clearly an offer and

acceptance to compromise, and there is a meeting of the minds as to the terms of the agreement. 11 Ill. L. & Pr. *Compromise & Settlement* §3 (1955); 15 Am. Jur. 2d *Compromise & Settlement* §6 (1964).

In the case at bar, the record is clear that counsel for Abbot was given authority by his principal to enter the proposed settlement. The law is clear that counsel may bind his principal to a settlement agreement. (*Boyd v. Larco-Industrial Painting Corp.* (W.D. Ark. 1973), 356 F. Supp. 917, 923; *Beirne v. Fitch Sanitarium, Inc.* (S.D. N.Y. 1958), 167 F. Supp. 652, 654.) There is nothing in the record to suggest that all counsel were not authorized to represent their respective clients in the litigation and settlement discussions. Counsel for Abbot admittedly understood the terms of the proposed agreement to be those provided for in the order of the court, and explained those terms to his client and was given authority to agree to the settlement. At the June 10, 1975, conference, all parties, by their attorneys, agreed to the terms of the settlement agreement. Nothing further remaining to be resolved, the trial court directed that an order be drafted incorporating the terms of the agreement in order that the litigation would be terminated. In the words of the trial court: "The agreement was formalized and the only thing that wasn't done, it wasn't reduced to writing at that particular point." Thus, the trial court had before it litigation involving a multitude of claims. Negotiations were conducted before the trial court between the attorneys resulting in an oral agreement to compromise the claims and settle the litigation. When the attorneys left the meeting on June 10, 1975, there was a binding enforceable agreement. The written order to be entered the following day was not to formalize the agreement, but to dispose of the litigation. In our opinion the trial court was correct in ordering performance of the settlement agreement.

Abbot cites *Vece v. De Biase* (1st Dist. 1964), 46 Ill. App. 2d 248, 197 N.E.2d 79, and *Glenner v. Chicago Transit Authority* (1st Dist. 1972), 9 Ill. App. 3d 323, 292 N.E.2d 217, as support for its argument that the settlement agreement in the case at bar was not finalized. The settlement agreement in *Vece*, which involved a material mistake of fact not known at the time of the negotiations, was dependent on the approval of the probate court. Such approval had not been secured. Thus all conditions precedent to the finality of the settlement agreement had not been accomplished. *Glenner*, a tort case, involved a situation in which the judge encouraged and used his office to effect a pretrial settlement. The plaintiff on the following day advised the trial court he did not want to settle; whereupon the trial court said it was too late. A motion to vacate was denied. So far as we can determine, the trial court in the case at bar did not intervene in the negotiations in any way, and certainly did not use

his office to force a settlement. In fact the record here clearly indicates the parties, through their attorneys, conducted negotiations resulting in an offer and acceptance of a settlement agreement.

However, Abbot contends that even if the settlement agreement was finalized, it was not binding because there was no meeting of the minds. There is no dispute that Abbot's attorney understood the terms of the agreement. However, it is alleged Norman Rubin, the president of Abbot, misunderstood those terms as they were explained to him prior to his authorization of the acceptance by his counsel. Since Rubin did not understand the terms of the agreement, he claims there was no meeting of the minds and no binding agreement. This case differs from *La Salle National Bank v. International, Ltd.* (2nd Dist. 1970), 129 Ill. App. 2d 381, 263 N.E.2d 506, relied upon by Abbot. *La Salle* involved a complex and involved fact situation, and it was clear there had not been a meeting of the minds as to an alleged settlement, since several important issues remained unresolved as to the terms of that agreement. While there are several claims in the case at bar, the fact situation is not complex, and all of the matters were resolved in the proposed settlement agreement. Nor is this case comparable to the factual issue involved in the compromise and settlement of a personal injury claim involved in *Thornberry v. Board of Education* (1st Dist. 1972), 8 Ill. App. 3d 351, 290 N.E.2d 360.

Even if the trial court found the president of Abbot had misunderstood the terms of the compromise, which it was under no obligation to assume (see *Larco*), the mistake was a unilateral one due to Rubin's own failure to understand a fact which was the center of the parties' dispute. We think Abbot is bound to the agreement it knowingly made. (See *In re Estate of Cunningham* (1924), 311 Ill. 311, 316, 142 N.E. 740; 11 Ill. L. & Pr. *Compromise & Settlement* §11 (1955).) Abbot's president had knowledge of the facts surrounding the claims and knew the disbursement of the $9,270.05 being held by the court had been the central point of conflict throughout the negotiations. Abbot's counsel admittedly understood that under the proposed agreement, the $9,270.05 held by the court would be distributed among the parties. It is difficult to believe this matter would not have been clearly explained to Abbot's president prior to acceptance of the proposed settlement. In fact, to hold otherwise based on this record would dilute the binding effect of oral compromise and settlement agreements and permit parties thereto to change their minds at their pleasure. At the time of acceptance by Abbot's counsel, there was a valid meeting of the minds and Abbot was bound by the acceptance of its attorney.

The only important factor is that the parties knowingly accepted the settlement, and we find the trial court did not err in finding the parties in

the case at bar knowingly agreed to the terms of this oral settlement agreement.

## II.

■■ We have considered the remainder of Abbot's contentions. This settlement was not subject to any prior performance by the parties; there was no violation of our Statute of Frauds; and the fact the court did not have jurisdiction over all parties involved in the settlement agreement is of no consequence in determining the validity of that agreement on the parties before the court. Finally we note that in all settlement agreements there is a compromising of claims. No party obtains what he alleges to be equitably his. Parties agree to accept less than their full claim in lieu of foregoing litigation. All parties in the case at bar accepted less than they claimed was owing them.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

STAMOS, P. J., and HAYES, J., concur.