McCRACKEN CONTRACTING COMPANY, Plaintiff-Appellee, *v.* R. L. De-PRIZIO & ASSOCIATES, INC., *et al.*, Defendants-Appellants.

First District (5th Division)   No. 83—762

Opinion filed March 23, 1984.

Bernard J. Bruno, of Bruno & Orvino, of Melrose Park (Sidney Z. Karasik, of counsel), for appellants.

Gordon B. Nash, Jr., of Chicago (Gardner, Carton & Douglas, of counsel), for appellee.

JUSTICE WILSON delivered the opinion of the court:
Defendants appeal an order of the circuit court of Cook County

granting a motion for summary judgment in accordance with an oral settlement agreement. The order dismissed the cause and entered judgment against defendants in the amount of $48,615 plus accrued interest. The sole issue on appeal is whether the trial court erred in granting summary judgment. For the reasons that follow, we affirm the judgment of the trial court.

The pleadings disclose the following facts relevant to our disposition. In May 1972, plaintiff and defendants entered into two agreements: a consignment agreement and an installment agreement for the purchase of certain equipment (equipment agreement). A few months later, the parties entered into a third agreement for the installment purchase of certain tools (tools agreement). In October 1973, because of defendants' financial difficulties, the parties modified the payment schedule set out in the equipment agreement, reducing the monthly amount and extending the term. No modification was made to the balance due, nor was any agreement other than the equipment agreement affected by the revised payment schedule. Defendants continued to experience financial problems and eventually became delinquent on all three agreements. As a result, in December 1976, plaintiff filed a four-count complaint against defendants requesting: (1) count I—the balance of $61,297.30 plus 6% interest due and owing on the equipment agreement; (2) count II—personal guarantee regarding the amount due in count I; (3) count III—the balance of $5,777 plus 6% interest due and owing on the tools agreement; and (4) count IV—an accounting to determine the amount due on the consignment agreement. In February 1978, in an effort to resolve the lawsuit, the parties met in the office of plaintiff's attorney and entered into an oral settlement agreement, consolidating the outstanding balances in all three agreements. Consequently, the 1976 complaint was dismissed without prejudice. Pursuant to the settlement agreement, defendants agreed to pay plaintiff a total of $90,000 at 6% interest in 48 monthly installments of $2,113.70 each.

In April 1980, after making 25 of the monthly installments, defendants stopped paying. As a result, on April 24, 1981, plaintiff filed another four-count complaint which essentially realleged those counts in the 1976 complaint with the necessary revisions having been made in the amounts due and owing on the various agreements. In their answer, defendants admitted entering into the original 1972 agreements, but denied the amount due and owing, and, in turn, filed a counterclaim which alleged that they had overpaid plaintiff, and requested reimbursement in the amount of $36,483.17. Plaintiff's motion to dismiss the counterclaim stated that pursuant to the 1978

agreement, the total amount due plaintiff from defendants was $101,457.60, of which only $52,842.50 had been paid, resulting in underpayment, not overpayment.

Following a change in plaintiff's attorneys, plaintiff filed a first-amended complaint in which it alleged that in consideration for dismissal of the 1976 lawsuit, defendants had agreed to pay plaintiff monthly installments of $2,113.70 for 48 months, commencing March 1, 1978. However, after making 25 of the monthly payments, defendants refused to pay more. In their answer, defendants admitted to entering into the 1978 settlement agreement, but claimed that: (1) the parties erred because they failed to consider the 1973 agreement; and (2) from October 1, 1973, to April 2, 1980, defendants had paid plaintiff $151,683.17, an amount in excess of their indebtedness.

Plaintiff then filed its motion for summary judgment, stating that there were no genuine issues as to the following: (1) a settlement agreement entered into by the parties in consideration for the dismissal of a 1976 lawsuit; (2) pursuant to the settlement agreement, defendants agreed to pay to plaintiff $90,000 plus interest in 48 monthly installments of $2,113.70 each; (3) after making 25 of the 48 payments, defendants refused to make any more; and (4) the unpaid balance on the settlement agreement is $48,615.10 plus interest. In response, defendants alleged, *inter alia*, that (1) plaintiff's pleading contains a discrepancy in the amount due; (2) defendants have overpaid plaintiff; and (3) the parties erred in arriving at the settlement by failing to consider the 1973 agreement. Following a hearing on the motion, the trial court entered its order granting summary judgment and ordered defendants to pay $48,615.10 plus interest. Defendants' timely appeal followed.

OPINION

Defendants contend that the trial court erred in granting summary judgment because disputed issues of material fact exist as to the basis of the 1978 settlement agreement and as to the amount due and owing at the time of that agreement.

■■ ■ As an effective means of promoting judicial economy, settlements are generally encouraged and favored by the courts, and, in the absence of mistake or fraud, are conclusive on the parties as to all matters included therein and will not be lightly altered or set aside. (*Knoll v. Swanson* (1968), 92 Ill. App. 2d 398, 402, 234 N.E.2d 543.) If not within the Statute of Frauds, settlements may be oral and are binding so long as there is an offer and acceptance to compromise and there is a meeting of the minds as to the terms of the agreement.

*Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.* (1976), 42 Ill. App. 3d 865, 868-69, 356 N.E.2d 837.

■ In the present case, there is no issue as to the offer and acceptance of a compromise. Both parties admit that the 1978 settlement agreement was entered into in consideration of dismissal of the 1976 complaint. However, defendants claim that a material doubt exists as to whether there was a meeting of the minds on the material elements of the agreement precluding the propriety of a summary judgment. In analyzing defendants' position, we are cognizant that because summary judgment is a drastic method of disposing of cases, we must construe the pleadings, depositions and affidavits most strictly against the movant and most liberally in favor of the opponent. *Kolakowski v. Voris* (1979), 76 Ill. App. 3d 453, 456-57, 395 N.E.2d 6.

■ Defendants first contend that issues of fact remain as to the basis of the 1978 agreement. Defendants' argument on this point is replete with factually erroneous statements and unsupported conclusions that render it totally unpersuasive. First, defendants allege "mutual mistakes of fact arising out of an oversight in the 1973 agreement." Yet, there is no evidence of this purported oversight. The 1973 agreement is simply described as having been a revision of the equipment agreement's payment schedule, nothing more. Second, defendant claims that McCracken's attorney, Peter B. Carey and defendant DePrizio intended the 1978 agreement "to establish a new payment schedule of the prior balance due," and that neither considered that agreement to modify or compromise the amount due. As the following excerpt from Carey's deposition illustrates, this is an erroneous statement:

"Q. [H]ow is it that you make the statement that the amount [due] was settled for $90,000?

A. Because the indebtedness, at that time, was in the amount of $88,000 some odd dollars plus interest. Ray [McCracken] agreed to waive part of that interest, and we agreed on a round figure of $90,000 at a rate of six percent for four years, which when you figure the monthly payments, that comes out to $2,113.70, of which Mr. DePrizio in fact made 25 payments pursuant to the agreement."

Further, the 1978 settlement agreement was a consolidation and settlement of the balances due pursuant to the equipment agreement, tool agreement and consignment agreement. Clearly, it was not merely an effort to establish a new payment schedule.

■ Third, defendants claim that based upon the alleged total

amount due in the 1976 complaint ($113,677) and the payments acknowledged by Carey to have been received by plaintiff ($9,916 in 1976; $24,580.35 in 1978), defendants' liability in 1978 would have been only $79,181, not "$88,000 some odd dollars." However, it is defendants, not plaintiff, who have made the mathematical error. Carey stated that the 1976 complaint was filed in December of that year. Thus, it is reasonable to assume that all payments made in 1976 ($9,916) would have been credited to defendants' account before the complaint had been filed. Thus, only the amount of $24,580.35 paid in 1978 remains to be credited against the 1976 balance of $113,677, resulting in a 1978 balance of $89,096.65. In our opinion, $89,096.65 can be reasonably characterized as "$88,000 some odd dollars."

■ Fourth, defendants place a great deal of emphasis on Carey's admission that he may not have personally received all of the payments made to plaintiff. Some of the payments could have been made directly to plaintiff. Defendants attempt to use this admission as support for their argument that the amount alleged to be due and owing is arbitrary and inaccurate. We disagree. In his deposition, Carey stated that he had relied upon the information given to him by his client, McCracken, to draft the original complaint and to arrive at the settlement. It is certainly not unreasonable that McCracken would have control over the records of his own company, not Carey. Further, there is no legal requirement that in order to draft a complaint or negotiate a settlement, an attorney must have independent knowledge of the facts contained therein.

Fifth, defendants allege that defendant DePrizio did not intend the 1978 settlement agreement "to affect the amount to be ultimately paid under its terms." This statement defies rational interpretation. It is difficult to imagine how an experienced business person entering into a contract to pay a certain monthly payment for a certain number of months could expect those payment terms not to affect the amount "to be ultimately paid."

■ Finally defendants allege that plaintiff's claim of $90,000 due and owing is ambiguous because 48 payments of $2,113.70 each do not equal a $90,000 principal with interest at 6%. We refrain from addressing this allegation on the ground that defendants' failure to raise this issue at trial has waived the issue on appeal. (*J.R. Sinnott Carpentry, Inc. v. Phillips* (1982), 110 Ill. App. 3d 632, 639, 443 N.E.2d 597.) We further note that defendants' conclusion lacks any mathematical verification.

Next, we shall address defendants' contention that issues of fact remain as to whether the 1978 settlement agreement was based on ei-

ther a mutual mistake of fact or a unilateral mistake. Regarding the former, defendants contend that because the parties were mutually mistaken as to the correct balance due plaintiff on February 3, 1978, the purported settlement agreement cannot be enforced according to its terms. In the alternative, defendants contend that the settlement is equally unenforceable if only the defendants were mistaken as to the balance due.

■ Generally, even when a contract has actually been entered into, a court of equity may rescind the agreement at the request of one party who entered into it without negligence, through a material mistake of fact, when it can do so without doing injustice to the other party. (*Vece v. De Biase* (1964), 46 Ill. App. 2d 248, 252, 197 N.E.2d 79.) However, the mistake must be material to the transaction; must not be the result of lack of diligence; must be of such grave consequence that enforcement of the contract would be unconscionable; and the other party must be able to be placed *in statu quo. Wil-Fred's Inc. v. Metropolitan Sanitary District* (1978), 57 Ill. App. 3d 16, 21, 372 N.E.2d 946.

■ After careful review of the pleadings, depositions and affidavits, which clearly evidence defendants' lack of diligence in verifying the alleged balance due in 1978, we conclude that, as a matter of law, defendants failed to properly plead the element of diligence necessary to establish a genuine issue of mistake as to a material fact. In defense of their admitted failure to verify the balance due in 1978, defendants argue:

> "In the present case, DePrizio met at the office of McCracken's lawyer. DePrizio was not represented by counsel. He was unwell at the time. DePrizio runs a small business without numerous staff to assist in bookkeeping and other matters. He had known McCracken and trusted him."

In our opinion, the foregoing constitutes nothing more than a series of excuses for having acted without due diligence. DePrizio's failure to have legal counsel present for the settlement of a legal dispute when he had full knowledge that McCracken's counsel would be present demonstrates gross imprudence. DePrizio's poor health is further reason he should have had legal counsel present. Furthermore, the fact that DePrizio's business is small does not excuse his negligent record keeping or his failure to consult whatever records he did keep. As the president of a business dealing in transactions involving thousands of dollars, DePrizio cannot rely on ignorance and blind trust to excuse him from acting in a reasonable and diligent manner.

■ Defendants further argue that "the question of diligence re-

volves on the issue whether it was reasonable for DePrizio to trust a statement of McCracken and McCracken's lawyer as to the remaining balance"; and that this is a question of fact for the jury. We disagree. The question of diligence revolves on the issue whether persons of reasonable prudence would have acted in the same manner under the same circumstances. (*Vece v. De Biase* (1964), 46 Ill. App. 2d 248, 252, 197 N.E.2d 79.) The uncontroverted facts are that defendants agreed to a settlement in consideration for the dismissal of a lawsuit[1] without verifying the amount due through their own records, without legal counsel, and continued to make payments pursuant to the terms of that settlement for two years. Any allegation of diligence made by defendants is unequivocally refuted by these facts. There is no question that all of the information necessary to arrive at a settlement was within defendants' knowledge and that plaintiff never attempted to conceal anything from defendants. That fact that the settlement was made on an allegedly incorrect basis is not now a sufficient reason for disregarding a settlement made with ample opportunity to verify and obtain full knowledge of the facts. (*Janci v. Cerny* (1919), 287 Ill. 359, 366, 122 N.E. 507.) To hold otherwise based on this record would undermine the binding effect of oral settlement agreements and permit parties to casually enter into agreements to compromise and settle, only to change their minds later because of an alleged mistake which due diligence would have revealed at the time the compromise was negotiated. By entering into the settlement agreement, the parties agreed to the terms, and each became bound by its acceptance. It would erode the very foundation of equitable jurisprudence to hold that mistake grounded in negligent business practices such as are evident in this case could create a valid defense, and, thus, a genuine issue of fact. See *Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.* (1976), 42 Ill. App. 3d 865, 870, 356 N.E.2d 837.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.

---

[1] We also note that the record is void of any dispute to the amounts alleged due in the 1976 complaint, which amounts were the basis for the 1978 settlement agreement.