MARTHA KNISLEY *et al.*, Plaintiffs, v. THE CITY OF JACKSONVILLE *et al.*, Defendants (Ken M. Hearold *et al.*, Plaintiffs-Appellants; Morrissey Construction Company *et al.*, Defendants-Appellees).

Fourth District   No. 4—86—0077

Opinion filed September 15, 1986.—Rehearing denied October 10, 1986.

Edward D. McNamara, Jr., and Edward Q. Costa, both of Springfield, for appellants.

Rammelkamp, Bradney, Hall, Dahman & Kuster, of Jacksonville (Larry D. Kuster and Barbara Fritsche, of counsel), for appellees.

JUSTICE WEBBER delivered the opinion of the court:

Two plaintiffs, out of an original group of 61, appeal from an order of the circuit court of Morgan County which enforced a settlement agreement entered into by attorneys for all of the plaintiffs and the defendants.

The factual background may be sketched briefly. The 61 plaintiffs brought an original suit seeking to enjoin the defendant city of Jacksonville and its superintendent of inspections from issuing certain building permits; alternatively, the suit sought to enjoin the defendant construction companies and a housing authority from proceeding with the construction of buildings on certain described real estate. The basis of the suit was that the use of the buildings would violate applicable zoning ordinances.

In the course of the proceedings the city of Jacksonville and the superintendent were dismissed on their motions and a number of plaintiffs were granted permission to withdraw.

Attorney Robert A. Huffman represented plaintiffs and entered into settlement negotiations with the attorneys representing defendants. A meeting was called of all plaintiffs, apparently to present a proposed settlement. Huffman testified at a hearing on his motion to withdraw as counsel for plaintiffs that he believed he had authority to settle as a result of the meeting. Although not all plaintiffs were present at the meeting, those who were not present subsequently agreed to settle. However, this first settlement agreement was rejected by defendants.

Thereupon, a second settlement agreement was drafted. Huffman stated:

"I personally contacted everybody I could get hold of, and by the rules that the group had operated by all along the majority, they all agreed that a majority would control the actions of the group, each of the individuals agreed to it. A majority was contacted, some people who had been opposed earlier remained opposed; those who had agreed earlier to settle continued to agree to settle to the modified proposal."

After documents were drafted to implement the second settlement, a plaintiff called Huffman and indicated that she was not satisfied with it. A second meeting of the plaintiffs was then held. During the meeting controversy arose among the plaintiffs as to whether the case should be settled. In view of that controversy, Huffman advised

the plaintiffs that he would seek leave to withdraw as plaintiffs' counsel. Such a motion was filed on October 2, 1985. The basis of the motion was the repudiation of the settlement agreement entered into by Huffman with the defendants on behalf of the plaintiffs.

On October 7, 1985, defendant construction companies filed a petition to enforce the settlement. It alleged that the parties, through their attorneys, had entered into a settlement agreement on October 1, 1985, and it had attached to it a copy of the alleged settlement agreement together with a copy of Huffman's motion to withdraw as counsel.

A hearing on Huffman's motion to withdraw was held on October 10, 1985. At that hearing he testified as to what has been set forth above, that is, he believed as a result of the first meeting that the majority would rule and that he had the authority to settle and so acted with regard to the second agreement. The motion to withdraw was allowed.

A hearing on the petition to enforce the settlement was begun on October 10, 1985, and continued on October 23, 1985. On the latter date Shirley Hearold, one of the plaintiffs on appeal, testified that a meeting of all plaintiffs was held on September 28, 1985, and discussions took place concerning settlement. She stated that she did not agree to the settlement and had never given anyone authority to settle for her. On cross-examination she stated that a vote was taken on the question of majority rule and that a majority of the group present voted in favor of such a rule. She herself voted against it. She also testified that another meeting was held on October 2, 1985. On redirect she stated that the terms discussed at the September 28 meeting were not the same as those contained in a stipulation for dismissal presented to her and introduced into evidence.

Ken Hearold, also one of the plaintiffs on appeal, testified on October 23. He stated that he attended the September 28 meeting but left prior to its completion. He further stated that Huffman was his attorney on September 28, 1985, but he had not given anyone authority to settle the case for him. He also attended the October 2 meeting.

Kathy Mussat, apparently 1 of the 61 original plaintiffs but not a plaintiff on appeal, testified on October 23. She stated that she attended the September 28 meeting at which Huffman asked if anyone "would be uncomfortable with going along with the majority, and no one spoke up." She voted against the settlement and stated that six persons had so voted.

At the conclusion of the hearing the trial court found in favor of the construction companies and entered an order enforcing the settle-

ment and terminating the action pursuant to the terms of the settlement agreement. In a written order the court made the following findings:

"1. That the Court has jurisdiction of the parties and of the subject matter of this case.

2. That Attorney Huffman convened the Plaintiffs for the purpose of determining whether or not settlement could be achieved.

3. That Attorney Huffman asked the Plaintiffs if they had any objections to being governed by a vote of the majority of Plaintiffs on settlement. No one spoke up in opposition. The silence was very loud. The time for objection had passed at that point.

4. That the Plaintiffs engaged in fair play, had their opportunity to be heard and granted the authority to settle the instant cause on behalf of the Plaintiffs.

5. That there was no material mistake in the authorized settlement terms.

6. That the Petition for Enforcement of Settlement Agreement is more probably true than not true."

Hearolds filed a motion to vacate the judgment, which was denied, and this appeal ensued.

The critical question on appeal is whether Huffman possessed the authority to settle for all the plaintiffs and this hinges on the correlative question of majority rule. Plaintiffs argue that he did not have that authority. Defendants claim that, because none of the plaintiffs objected to being bound by the majority, they are now so bound, as is the entire group. In response plaintiffs argue that the record clearly shows that not all parties agreed to be bound and, hence, the settlement is unenforceable against them.

The general rules concerning settlements are well known and need only a brief recapitulation here.

■■ Settlement agreements are to be encouraged and given full force and effect. (*Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.* (1976), 42 Ill. App. 3d 865, 356 N.E.2d 837.) In the absence of mistake or fraud, settlement agreements are conclusive on the parties as to all matters included therein and will not be lightly altered or set aside. (*McCracken Contracting Co. v. R. L. DePrizio & Associates, Inc.* (1984), 122 Ill. App. 3d 680, 462 N.E.2d 682.) A settlement agreement is binding as long as there is clearly an offer and an acceptance to compromise, and there is a meeting of the minds as to the terms of the agreement. 122 Ill. App. 3d 680, 462 N.E.2d 682; *Shef-*

*field Poly-Glaz, Inc. v. Humboldt Glass Co.* (1976), 42 Ill. App. 3d 865, 356 N.E.2d 837.

■ The law is clear that an attorney may bind his client to a settlement agreement. (42 Ill. App. 3d 865, 356 N.E.2d 837.) However, an attorney authorized to represent a client in litigation does not necessarily have authority to conclude a settlement (*Jones v. Engel* (1953), 349 Ill. App. 423, 111 N.E.2d 187); he must receive express consent or authorization to compromise a claim or settle a case. (See *Chiappetti v. Knapp* (1974), 20 Ill. App. 3d 538, 314 N.E.2d 489; *Karetzkis v. Cosmopolitan National Bank* (1962), 37 Ill. App 2d 484, 186 N.E.2d 72.) While an attorney's authority to settle must be expressly conferred, the existence of the attorney of record's authority to settle in open court is presumed unless rebutted by affirmative evidence showing that authority is lacking. (*Szymkowski v. Szymkowski* (1982), 104 Ill. App. 3d 630, 432 N.E.2d 1209.) Where a party silently stands by and permits his attorney to act in his behalf in dealing with another in a situation where the attorney may be presumed to have authority, the party is estopped from denying the agent's apparent authority as to third persons. 104 Ill. App. 3d 630, 432 N.E.2d 1209.

Defendants stress the latter theory and emphasize the majority-rule aspects of the instant case. However, we believe that the record is adequate to indicate that the plaintiffs never consented to be bound by the majority. Furthermore, defendants' theory is completely at odds with our supreme court's Code of Professional Responsibility, Disciplinary Rule 5—106 (87 Ill. 2d R. 5—106), which states:

> "A lawyer who represents two or more clients shall not make or participate in the making of an aggregate settlement of the claims of or against his clients, unless each client has consented to the settlement after being advised of the existence and nature of all the claims involved in the proposed settlement, of the total amount of the settlement, and of the participation of each person in the settlement."

Of remarkable similarity to the instant case is *Hayes v. Eagle-Picher Industries, Inc.* (10th Cir. 1975), 513 F.2d 892. In that case a group of plaintiffs and their attorney agreed that majority rule would govern acceptance of a proposed settlement. The defendant offered a lump-sum settlement for distribution to the entire group. Thirteen plaintiffs voted for acceptance and five voted against. The district court was informed of the majority rule and accordingly reduced the settlement to judgment. On appeal the circuit court of appeals reversed, saying:

> "In our view, however, this arrangement is contrary to the

plain duties owed by an attorney to a client. An agreement such as the present one which allows a case to be settled contrary to the wishes of the client and without his approving the terms of the settlement is opposed to the basic fundamentals of the attorney-client relationship. Inasmuch as the attorney is merely an agent for the client in negotiation and settlement, the approval of the client is an all important essential to a settlement which is to be binding, and if this approval is not present the court is placed in a most unfavorable position in enforcing it.

One other aspect which complicates the problem is the fact that the agreement calling for the majority governing the decision to settle was entered into some time prior to the date of negotiations. It is difficult to see how this could be binding on non-consenting plaintiffs as of the time of the proposed settlement and in the light of the terms agreed on. In other words, it would seem that plaintiffs would have the right to agree or refuse to agree once the terms of the settlement were made known to them.

A further difficult aspect in the enforcement of such an agreement is the ethical problem which is posed for the attorney who is bound by Rule 5—106 of the Code of Ethics promulgated by the Kansas Supreme Court which requires the attorney to refrain from participating in a settlement on behalf of two or more clients unless each of them consents to it. In view of this, it was untenable for the lawyer to seek to represent both the clients who favored the settlement and those who opposed it.

* * *

In sum, then, we conclude that the trial court erred in [rendering] its judgment. We hold that the arrangement presented allowing the majority to govern the rights of the minority is violative of the basic tenets of the attorney-client relationship in that it delegates to the attorney powers which allow him to act not only contrary to the wishes of his client, but to act in a manner disloyal to his client and to his client's interests. Because of this, it is essential that the final settlement be subject to the client's ratification particularly in a non-class action case such as the present one." 513 F.2d 892, 894-95.

In the case at bar it is clear from the record that all interested parties knew from the beginning that some of the plaintiffs were opposed to the settlement. Shirley Hearold testified that she voted

against it in the September 28 meeting. Kathy Mussat testified that at least six persons voted against it.

■ The *Hayes* court alluded to class action suits. There exists a sharp distinction between them and a simple joinder action as in the instant case. In a class action court approval is required if the case is to be compromised or dismissed. (Ill. Rev. Stat. 1985, ch. 110, par. 2—806.) That approval will come only if the court determines that the settlement is fair, reasonable, and in the best interests of all affected. (*Waters v. City of Chicago* (1981), 95 Ill. App. 3d 919, 420 N.E.2d 599.) In a joinder action there is no judicial review of the settlement and a party should not be bound unless he has specifically agreed to it. Fundamental fairness is violated when a settlement is allowed to bind parties who object and no safeguards have been added to protect their interests.

■ For the foregoing reasons, the judgment of the circuit court of Morgan County is reversed as to Ken M. Hearold and Shirley J. Hearold, plaintiffs on appeal; as to the plaintiffs below who consented to the settlement, the judgment is affirmed; as to the plaintiffs below who objected to the settlement but did not appeal, the judgment is affirmed; the cause is remanded to the circuit court for further proceedings in accordance with the views expressed in this opinion.

Affirmed in part, reversed in part, and remanded.

McCULLOUGH, P.J., and MORTHLAND, J., concur.