VALERIE GRAY, Indiv. and as Independent Adm'r of the Estate of William Gray, Deceased, Plaintiff-Appellant, v. NATIONAL RESTORATION SYSTEMS, INC., *et al.*, Defendants-Appellees (Degussa Corporation *et al.*, Defendants).

First District (5th Division)    No. 1—01—4062

Opinion filed April 16, 2004.—Rehearing denied January 12, 2005.

CAMPBELL, P.J., concurring in part and dissenting in part.

O'Callaghan & Colleagues, P.C., of Chicago (Joseph Michael O'Callaghan, of counsel), for appellant.

Meyer, Kreuzer, Esp & Cores, of Wheaton (Nichole L. Johs and Adam S. Kreuzer, of counsel), for appellee National Restoration Systems, Inc.

Cassiday, Schade & Gloor, of Chicago (Brian A. Schroeder, David C. Van Dyke, and Donald F. Ivansek, of counsel), for appellee Glenrock Corporation.

JUSTICE REID delivered the opinion of the court:

The plaintiff, Valerie Gray (Gray), individually and as special administrator of the estate of William Gray, deceased (decedent), brought a survival action, an action for wrongful death and a family expense action against the defendants, National Restoration Systems, Inc. (National Restoration), Crenova, Inc., f/k/a Hüls America, Inc.

(Hüls),[1] and the Glenrock Corporation (Glenrock), to recover damages for the fatal injuries incurred by her husband, the decedent, resulting from an explosion at the decedent's workplace.

Gray appeals from the following orders of the circuit court of Cook County: (1) an order of May 31, 2000, which granted National Restoration's motion to dismiss Gray's second amended complaint pursuant to section 2—619(a)(9) of the Illinois Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 2002)) with prejudice, (2) an order of September 13, 2000, that granted summary judgment in favor of Hüls as to certain portions of Gray's second amended complaint, (3) an order of September 12, 2000, that granted Glenrock's section 2—619 motion to dismiss Gray's second amended complaint with prejudice, and the portion of a June 20, 2001, order that denied Gray's motion for leave to allow her third amended complaint to stand against Glenrock and that also struck Glenrock from Gray's third amended complaint, and (4) a September 28, 2001, order that denied Gray's motion to plead punitive damages. For the reasons that follow, we reverse the decision of the trial court in part, affirm it in part, and remand the cause for further proceedings.

## BACKGROUND

National Resurfacing, Inc. (National Resurfacing), and National Restoration provided concrete repair, waterproofing and caulking services for a restoration project located at the Days Inn Hotel in Chicago, Illinois, in July 1995. During a deposition, Thomas F. Reagan (T. Reagan) stated that he was the president of National Restoration and oversaw the Days Inn project. T. Reagan said that at the time of the occurrence, the decedent was an employee of National Restoration.

During a deposition, Frank Reagan (F. Reagan), T. Reagan's father and also an owner of National Restoration and National Resurfacing, stated that although National Restoration and National Resurfacing were two separate legal entities, he and his son ran the two companies as if they were one. F. Reagan stated that the decedent was an employee of National Resurfacing at the time of the incident. F. Reagan's statement was supported by a W2 form for the decedent which was from National Resurfacing.

Hüls manufactures a concrete waterproofing product called Chem-

---

[1]Plaintiff's original complaint named Degussa Corporation as a defendant. Degussa apparently changed its business name and/or association numerous times (Creanova, Inc., Sivento, Inc., Degussa Hüls Corporation, Kay Fries, Inc., Dynamit Nobel Corporation of America, Inc.). On appeal, the parties refer to this corporation only as Hüls America, Inc.

Trete BSM 20. Glenrock sells construction products including Chem-Trete BSM 20. Glenrock sold Chem-Trete BSM 20 to National Restoration and National Resurfacing for the Days Inn project.

The decedent worked as a laborer at the Days Inn project. On July 20, 1995, decedent was fatally injured when he attempted to saw the lid off a 55-gallon drum that contained residue of Chem-Trete BSM 20 and the drum exploded.

Deposition testimony reveals that Nicholas LaFleur, the decedent's direct supervisor, had instructed the decedent to load a Dumpster with debris by use of a chute from the second floor which led to the Dumpster. Several hours later, decedent's coworker, Gerald McLin, spoke with decedent, and as McLin turned to walk away, he saw decedent pick up a saw. When McLin was approximately eight feet away from Gray, McLin heard the saw cut into a drum and then heard a loud explosion. McLin turned around and saw flames.

Chem-Trete BSM 20 consists in relevant part of 70% ethanol and 10% methanol. Hüls attached a label to every container of Chem-Trete BSM 20 which displays a large red diamond with a flame inside and reads: "FLAMMABLE LIQUID." The label also contains the following additional warnings:

"WARNING!

\*\*\*

FLAMMABLE LIQUID AND VAPOR.

\*\*\*

KEEP AWAY FROM HEAT, SPARKS, AND FLAME.

\*\*\*

Since emptied containers retain product residue, follow label warnings even after container is emptied.

Before Using This Chemical, Read Material Safety Data Sheet."

F. Reagan stated that he informed the decedent in July 1995 that the material safety data sheet (MSDS) for the Chem-Trete BSM 20 was in the "job box" and that the decedent could read it anytime. LaFleur confirmed that the MSDS for the Chem-Trete BSM 20 was in the job box and that the decedent could read it anytime. T. Reagan also confirmed that the MSDS was in the job box.

After the explosion, photographs were taken of the drum that the decedent had cut with a saw. The pictures revealed that some text was missing from the label, but that the warnings, "Since emptied containers retain product residue, follow label warnings even when container is emptied," and "KEEP AWAY FROM HEAT, SPARKS, AND FLAME," appear on the label, along with the large, red diamond with the warning "FLAMMABLE LIQUID."

On October 5, 1995, Gray filed a worker's compensation claim (ap-

plication for adjustment No. 95 WC 57531), with the State of Illinois Industrial Commission against "National Resurfacing Inc. d/b/a National Restoration Systems" for damages associated with decedent's fatal accident.

On June 25, 1997, Gray filed suit against: (1) "National Restoration Systems, Inc., f/k/a National Resurfacing Inc.," for negligence, (2) Hüls for negligence and strict liability, and (3) American States Insurance Co., Weidner & McAuliffe, Ltd., and Richard J. Leamy, Jr., for spoliation of evidence.

On July 21, 1997, Gray filed her first amended complaint. Once again the complaint named "National Restoration Systems, Inc., f/k/a National Resurfacing Inc.," as a defendant. Furthermore, Gray added seven additional defendants, which included Glenrock for strict liability and negligence.

On September 30, 1997, "National Restoration Systems, Inc., f/k/a National Resurfacing Inc. (collectively, 'National')," filed a motion to dismiss Gray's first amended complaint pursuant to section 2—619 of the Illinois Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 2002)) based on the exclusive remedy provision of the Workers' Compensation Act (820 ILCS 305/5(a) (West 2002)) (the Act), which states:

> "No common law or statutory right to recover damages from the employer *** for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act, to any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury."

On December 22, 1997, the trial court denied National Restoration's motion without prejudice. The trial court advised the parties that if Gray collected any money from National Restoration in the worker's compensation proceeding, her common law action would be dismissed.

Gray's claims against Richard J. Leamy, Jr., were settled and dismissed on April 2, 1999. On April 12, 1999, Gray's claims against American States Insurance Co. and Weidner & McAuliffe, Ltd., were settled and dismissed.

On February 14, 2000, Gray filed a second amended complaint against "National Restoration Systems, Inc., an Illinois corporation," Hüls and Glenrock. In the complaint, Gray alleged that Hüls and Glenrock negligently failed to incorporate labeling on Chem-Trete BSM 20 drums that would warn users of: (1) its explosive potential, in violation of 29 C.F.R. § 1910.1200(f) (2003), and (2) the nature and

extent of the risk and harm from explosion when power equipment capable of producing heat or sparks is operated on or in the vicinity of Chem-Trete BSM 20. In addition, Gray alleged that Hüls and Glenrock carelessly and negligently: (1) failed to provide adequate warnings to users of Chem-Trete BSM 20 that would give notice of the concealed risk of the explosive potential of Chem-Trete BSM 20 vapors remaining in purportedly empty drums; (2) sold to National Restoration a quantity of Chem-Trete BSM 20 without investigating the ability of National Restoration to apply, use, store and dispose of such a chemical safely; (3) failed to ascertain whether National Restoration complied with applicable federal regulations in its use of Chem-Trete BSM 20; (4) failed to approve users of their product; and (5) sold drums of Chem-Trete BSM 20 to persons who were not qualified applicators of the chemical.

On March 1, 2000, the Industrial Commission approved a settlement in Gray's worker's compensation claim. The settlement contract lump-sum petition and order (settlement contract) was entitled "Valerie Gray, widow of William Gray, deceased v. National Restoration Systems, Inc. a/k/a National Resurfacing, Inc." The settlement contract stated:

"Respondent, William Gray's employer, National Restoration, Inc., to pay and petitioner to accept $220,000 in full and final settlement of any and all claims under the Worker's Compensation and Occupational Disease Acts for all accidental injuries allegedly incurred as described herein ***."

On March 10, 2000, "National Restoration Systems, Inc. f/k/a National Resurfacing, Inc.," filed a section 2—619(a)(9) motion to dismiss Gray's second amended complaint based on the settlement contract and the exclusive remedy provision of the Act (820 ILCS 305/11 (West 2002)). Section 11 of the Act states:

"§ 11. The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer engaged in any of the enterprises or businesses enumerated in Section 3 of this Act, or of any employer who is not engaged in any such enterprises or businesses, but who has elected to provide and pay compensation for accidental injuries sustained by any employee arising out of and in the course of the employment according to the provisions of this Act, and whose election to continue under this Act, has not been nullified by any action of his employees as provided for in this Act." 820 ILCS 305/11 (West 2002).

On March 13, 2000, Glenrock moved to dismiss Gray's second amended complaint pursuant to section 2—619(a)(9) based on the facts that: Glenrock was merely a distributor of Chem-Trete BSM 20;

Glenrock receives drums of Chem-Trete BSM 20 from Hüls in sealed containers and does not alter the drums or the Chem-Trete BSM 20 in any manner; Glenrock served merely as a conduit between Hüls and the end user, in this case, National Restoration; Glenrock neither determines the form or content of the label and the MSDS, nor does it investigate, train or approve the customers who purchase Chem-Trete BSM 20; and Hüls does not require Glenrock to certify that its customers are knowledgeable in the use and application of Chem-Trete BSM 20.

On August 11, 2000, Gray filed a response to Glenrock's motion to dismiss claiming that the deposition testimony of Michael Watson, a Glenrock officer, suggested that Glenrock did not provide National Restoration with the MSDS. Gray also attached a document issued by Hüls regarding Chem-Trete BSM 20 entitled "Product Data Test Information." Dated November 1996, 16 months following decedent's fatal injury, Gray argued that the document retroactively imposed a duty upon Glenrock to sell Chem-Trete BSM 20 only to approved applicators of the chemical.

Gray also cited the affidavit of Ed McGettigan, Hüls' national sales manager, and claimed that this affidavit suggested that Glenrock was required to certify that National Restoration was aware of the contents of the Chem-Trete BSM 20 label and MSDS. In this affidavit, McGettigan stated:

"Hüls did not require The Glenrock Company to in any way certify Glenrock's customers regarding the customer's knowledge of the nature of Chem-Trete BSM 20 or the application of the product beyond any national standards contained in the product labeling affixed to the metal drums by Hüls America or contained in the Material Safety Data Sheets issued in compliance with Federal government regulations."

On May 31, 2000, the trial court entered an order wherein it: (1) determined that at the time of the accident, National Restoration was the decedent's immediate employer, (2) granted National Restoration's section 2—619(a)(9) motion to dismiss with prejudice, and (3) stated that the order was "not final and appealable."

On June 23, 2000, Hüls filed a motion for summary judgment regarding Gray's negligence claims. Hüls attached to the motion a color copy of the Chem-Trete BSM 20 label to illustrate that the label contained the warnings, "FLAMMABLE LIQUID AND VAPOR," "KEEP AWAY FROM HEAT, SPARKS, AND FLAME," "Since emptied containers retain product residue, follow label warnings even when container is emptied" and the large red diamond that stated, "FLAMMABLE LIQUID."

Gray's response to Hüls' motion attached the affidavit of an expert, Robert Kretvix. In the affidavit, Kretvix stated that he compared the color label attached to Hüls' motion with postoccurrence photographs of the drum, and the postoccurrence photographs indicated that the warning "FLAMMABLE LIQUID AND VAPOR" was not on the label of the drum that Gray sawed, thereby admitting that the drum displayed the other warnings.

On August 2, 2000, Hüls filed a motion to withdraw sections of its motion for summary judgment on the issue of the adequacy of the warnings. On August 11, 2000, over Gray's objection, the trial court granted Hüls' motion to withdraw portions of its motion of summary judgment.

On September 13, 2000, the trial court heard arguments on Hüls' motion for summary judgment. The trial court addressed Gray's claim that the postoccurrence photographs indicated that certain text was missing from the label of the drum that the decedent sawed. The court stated:

"Even under your [plaintiff's] theory, there [are] still the words on the destroyed drum's label, since emptied containers contain product reside, follow label warnings after container is empty; and there is still the big flammable sign with the flame.

\* \* \*

It does have the warning that the empty container can have residue in it, and you should follow the label warning even after the container is empty.

It does have the warning that you have to read the material safety data sheet. It does have the warning that there are vapors, and it does have the warning to keep away from sparks. That's what's on there no matter what exists."

The trial court then entered an order wherein it granted in part and denied in part Hüls' motion. The court denied Hüls' motion "as to preemption, adequacy of warnings; foreseeability, open and obvious." The trial court then granted Hüls' motion as to certain allegations in Gray's second amended complaint, which it delineated in the order.

Also on September 13, 2000, the trial court granted Glenrock's motion to dismiss with prejudice. The trial court found that National Restoration had the MSDS and rejected as a nonissue Gray's assertions that Glenrock was required to certify that National Restoration was aware of the contents of the label and MSDS and that Glenrock was required to approve National Restoration as an applicator. The trial court stated, "to be held on a voluntary assumption of duty, you have to do something. Nobody did anything here."

On June 13, 2001, Gray filed a third amended complaint. Despite the fact that the trial court dismissed Gray's negligence allegations against Glenrock, Gray again alleged negligence against both Hüls and Glenrock. Gray alleged that Hüls and Glenrock violated several Occupational Safety and Health Administration (OSHA) regulations in numerous particulars.

On June 14, 2001, Grey sought leave to plead punitive damages against Hüls. On June 20, 2001, the trial court struck the claims in Gray's third amended complaint that were against Glenrock. After a series of attempts to amend this motion and following a hearing, the trial court denied the motion on September 28, 2001.

On October 10, 2001, Gray filed a motion to vacate the denial of her motion for leave to plead punitive damages, in which Gray argued for the first time that the motion was "mooted" by the filing of her fourth amended complaint. The trial court summarily denied Gray's motion and Gray voluntarily dismissed the case. Hüls requested statutory costs and the trial court instructed Hüls to file a motion requesting same.

On October 17, 2001, Hüls filed a motion for costs and the trial court scheduled the motion for hearing on November 8, 2001. On November 7, 2001, Hüls notified the trial court and Gray by letter that it would withdraw its motion for costs. On November 8, 2001, Gray filed a notice of appeal and the case was continued to November 14, 2001. On November 14, 2001, the trial court allowed Hüls to withdraw its motion for costs.

## ANALYSIS

### I

The first question we will address on review is whether the trial court erred when it determined that National Restoration was the decedent's immediate employer and dismissed Gray's second amended complaint pursuant to section 2—619(a)(9) with prejudice.

A section 2—619 motion to dismiss admits the legal sufficiency of the plaintiff's allegations but asserts affirmative matter that avoids or defeats the claim stated. *Peetoom v. Swanson*, 334 Ill. App. 3d 523, 526 (2002). The purpose of a section 2—619 motion to dismiss is to afford litigants a means of disposing of issues of law and easily proved issues of fact at the outset of a case, reserving disputed questions of fact for a trial. *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995).

Therefore, when ruling on a section 2—619 argument, a trial court may consider pleadings, depositions and affidavits. *Zedella*, 165 Ill. 2d at 185. If a cause of action is dismissed pursuant to a section 2—619 argument, the questions on appeal are whether a genuine issue of

material fact exists and whether the defendants are entitled to judgment as a matter of law. *Zedella*, 165 Ill. 2d at 185-86. The dismissal of a complaint under section 2—619 is subject to *de novo* review. *Peetoom*, 334 Ill. App. 3d at 526.

■ We find *Laffoon v. Bell & Zoller Coal Co.*, 65 Ill. 2d 437 (1976), to be instructive in regard to this matter. In *Laffoon*, the plaintiffs were the immediate employees of subcontractors that did not provide worker's compensation insurance. Each of the plaintiffs suffered an injury while working on their respective jobs. Consequently, the general contractors in each case were forced to pay the injured plaintiff's worker's compensation claims. The question that the *Laffoon* court was faced with was whether section 5(a) of the Act provided the general contractors with immunity from further litigation by the plaintiffs, since they paid the plaintiffs' worker's compensation claims. The *Laffoon* court held:

> "Accordingly, we must interpret section 5(a) as conferring immunity upon employers only from common law or statutory actions for damages by their *immediate employees*. To hold otherwise in light of the present factual situations would be violative of the injured employee's right to due process and equal protection of the laws." (Emphasis added.) *Laffoon*, 65 Ill. 2d at 447.

Taking *Laffoon* into consideration, if National Resurfacing was the decedent's employer at the time of the accident, Gray would have the right to pursue a common law suit against National Restoration. Although National Restoration paid the worker's compensation claim, if National Restoration was not the decedent's immediate employer, section 5(a) of the Act would not provide National Restoration with immunity from further litigation. *Laffoon*, 65 Ill. 2d at 447. Accordingly, the question of who was the decedent's employer at the time of the accident becomes a question of paramount importance in this litigation.

■ Here, the trial court's decision to grant National Restoration's motion to dismiss was error because a question of fact exists as to whether the decedent was an employee of either National Restoration or National Resurfacing. Deposition testimony revealed that T. Reagan, the president of National Restoration, stated that the decedent was an employee of National Restoration at the time of the accident. However, in another deposition, F. Reagan, an owner of both National Restoration and National Resurfacing, stated that the decedent was an employee of National Resurfacing at the time of the accident. These statements clearly present an issue of fact as to who was the decedent's employer at the time of his death. As such, it was improper for the trial court to grant National Restoration's motion to dismiss.

In response, National Restoration argues that the settlement agreement which Gray signed prevents her from pursuing further relief from National Restoration. We disagree. After reviewing the record, we find that the settlement agreement which Gray signed *only* settled the worker's compensation suit and nothing more. The settlement did not and cannot prevent her from pursuing further relief that she is entitled to pursue under the Act.

National Restoration further argues that the doctrine of judicial estoppel prevents Gray from maintaining her common law cause of action against National Restoration because she took a prior position during the worker's compensation claim. Particularly, National Restoration argues that because Gray argued that National Restoration was the decedent's employer in the worker's compensation suit, she cannot now argue that National Restoration was not the decedent's employer.

■ The doctrine of judicial estoppel prevents a party from asserting inconsistent positions in separate proceedings to receive favorable judgments in each. *Ceres Terminals, Inc. v. Chicago City Bank & Trust Co.*, 259 Ill. App. 3d 836, 849-50 (1994). "The doctrine of judicial estoppel provides that when a party assumes a certain position in a legal proceeding, that party is precluded from assuming a contrary position in a subsequent legal proceeding. *People v. Wisbrock*, 223 Ill. App. 3d 173, 175, 584 N.E.2d 513, 515 (1991). For the doctrine to apply: (1) the party must have taken two positions; (2) the positions must have been taken in separate judicial or quasi-judicial administrative proceedings; (3) the party must have intended for the trier of fact to accept the truth of the facts alleged in support of the position; (4) the party must have succeeded in asserting the first position and received some benefit from it; and (5) the two positions must be inconsistent. *Wisbrock*, 223 Ill. App. 3d at 175, 584 N.E.2d at 515." *People v. Melka*, 319 Ill. App. 3d 431, 441 (2000).

■ Here, Gray is not judicially estopped from maintaining this cause of action against National Restoration because it is allowed by the provisions of the Act. Here, under the Act, National Restoration was liable to Gray for the injuries that the decedent incurred regardless of the stance that Gray took in those proceedings. Furthermore, if it is determined in the trial court on remand that National Resurfacing was the decedent's employer at the time the accident, the Act also allows Gray to then file suit against National Restoration for common law negligence. This is allowed under the Act as interpreted by *Laffoon*, and Gray's rights cannot be abridged by the application of the doctrine of judicial estoppel in this instance.

■ Finally, National Restoration argues that Gray's cause of action

is barred by *res judicata*. Specifically, National Restoration maintains that Gray's decision to pursue worker's compensation and the subsequent settlement precludes her from now advancing an inconsistent position in this litigation as a matter of law.

A final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action under the doctrine of *res judicata*. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). *Res judicata* promotes judicial economy by requiring parties to litigate in one case all claims arising out of the same group of operative facts. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 393 (2001). The doctrine applies not only to what was decided in the first actions, but also "those matters that could have been decided in that suit." *River Park, Inc.*, 184 Ill. 2d at 302.

The following requirements must be met for the doctrine of *res judicata* to apply: (1) a court of competent jurisdiction rendered a final judgment on the merits; (2) there is an identity of causes of action; and (3) there is an identity of parties or their privies. *Nowak*, 197 Ill. 2d at 390; *River Park, Inc.*, 184 Ill. 2d at 302.

The doctrine of *res judicata* does not bar Gray from further pursuing a suit against National Restoration, if it is determined that National Restoration was not the decedent's employer at the time of the accident. Although National Restoration paid the settlement in Gray's worker's compensation suit, that does not bar Gray from bringing a common law suit. This right of action is allowed under *Laffoon*, and the doctrine of *res judicata* cannot prevent Gray from herein asserting her rights.

II

█ Initially, Hüls and Glenrock argue that this court lacks jurisdiction to hear this appeal because Gray prematurely filed her notice of appeal.

The record shows that the trial court dismissed plaintiff's claims against Glenrock on September 13, 2000, and June 20, 2001, without a finding pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), which provides for appeal from final judgments that do not dispose of an entire proceeding when the trial court makes an express written finding that there is no just reason for delaying either enforcement or appeal or both. Gray voluntarily dismissed her case on October 10, 2001, which made these two orders final and immediately appealable. *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 503 (1997) (a voluntary dismissal makes immediately appealable all prior orders that were final but not appealable).

Also on October 10, 2001, the trial court granted Hüls leave to file a motion for costs. Hüls filed the motion on October 17, 2001, and the motion was scheduled for hearing on November 8, 2001. On November 7, 2001, Hüls informed the trial court and Gray by letter that it withdrew the motion for costs. On November 8, 2001, the trial court continued the case to November 14, 2001, without addressing the status of Hüls' motion. Gray filed her notice of appeal on November 8, 2001. The trial court entered an order withdrawing Hüls' motion for costs on November 14, 2001.

Defendants argue that disposal of Hüls' motion for costs was necessary in order to achieve finality in the underlying action and, therefore, the three orders did not become final and appealable until November 14, 2000. However, there is a distinction between necessary claims and claims that are incidental or collateral to an underlying action for the purpose of determining jurisdiction. Motions for fees collateral to the judgment do not affect the appealability of a final judgment. *Servio v. Paul Roberts Auto Sales, Inc.*, 211 Ill. App. 3d 751, 759 (1991). Costs such as deposition fees are considered ancillary to the litigation. *Physicians Insurance Exchange v. Jennings*, 316 Ill. App. 3d 443, 451 (2000).

Here, Hüls' petition for costs primarily consisted of deposition costs and related filings, copies, transcripts and travel expenses related to the depositions. Thus the resolution of Hüls' petition for costs need not have been resolved before this action became appealable. See *Berger v. Matthews*, 216 Ill. App. 3d 942 (1991).

Gray's appeal was proper once the case was voluntarily dismissed. This court therefore has jurisdiction over Gray's appeal of the orders entered September 13, 2000, June 20, 2001, and September 28, 2001.

### III

Next, Gray alleges that the trial court erred when it entered an order on September 13, 2000, in which it granted Glenrock's section 2—619 motion to dismiss her second amended complaint with prejudice and dismissed Glenrock from the case. Gray's second amended complaint alleged, *inter alia*, negligence against Glenrock for failing to provide warnings and labeling in violation of OSHA regulations, for negligently approving users of Chem-Trete BSM 20 and for selling Chem-Trete BSM 20 to persons who were not qualified applicators of the product.

Gray further alleged that the trial court erred when it entered an order on January 20, 2001, wherein it denied her motion for leave to allow her third amended complaint against Glenrock and struck Glenrock from her third amended complaint. Gray's third amended complaint repled the allegations in her second amended complaint. It

also alleged that Glenrock negligently failed to warn the decedent of the dangers of Chem-Trete BSM 20 in violation of OSHA regulations and the American National Standard for Hazardous Industrial Chemical's Precautionary Labeling (ANSI Z129.1—1994, 400.1—1993).

As noted above, a motion to dismiss a claim based on section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2002)) admits the legal sufficiency of the plaintiff's allegations but asserts affirmative matter that avoids or defeats the claim stated. *Peetoom*, 334 Ill. App. 3d at 526. The purpose of section 2—619 is to afford litigants a means of disposing of issues of law and easily proved issues of fact at the outset of a case, reserving disputed questions of fact for a trial. *Zedella*, 165 Ill. 2d at 185. Therefore, when ruling on a section 2—619 argument, a trial court may consider pleadings, depositions, and affidavits. *Zedella*, 165 Ill. 2d at 185. If a cause of action is dismissed pursuant to a section 2—619 argument, the questions on appeal are whether a genuine issue of material fact exists and whether the defendants are entitled to judgment as a matter of law. *Zedella*, 165 Ill. 2d at 185-86. The dismissal of a complaint under section 2—619 is subject to *de novo* review. *Peetoom*, 334 Ill. App. 3d at 526.

In order to recover damages based on a defendant's alleged negligence, a plaintiff must allege and prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty and that the breach was the proximate cause of the plaintiff's injuries. *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 256 (1999). The determination of the existence of a duty is a question of law to be resolved by the court. *McCoy v. Chicago Housing Authority*, 333 Ill. App. 3d 305, 308 (2002). A duty to warn exists when there is unequal knowledge and the defendant, possessed with such knowledge, knows or should know that harm might occur if no warning is given. *McColgan v. Environmental Control Systems, Inc.*, 212 Ill. App. 3d 696, 700 (1991).

Here, as to the issue of Glenrock negligently failing to provide the proper warnings concerning the dangers of Chem-Trete BSM 20, Gray argues that the trial court committed error because there was an issue of fact as to whether Glenrock provided National Restoration with the MSDS for the Chem-Trete BSM 20. The record reveals that T. Reagan, F. Reagan and LaFleur all stated that the MSDS for the Chem-Trete BSM 20 was in the job box prior to the accident. However, Gray supported her second amended complaint with the deposition testimony of Michael Watson, a sales manager and secretary of Glenrock. In Watson's deposition, he testified that there was nothing in the shipping documentation with respect to the delivery of the Chem-Trete

BSM 20 from Glenrock to National Restoration which indicated that the MSDS was delivered. He further testified that this type of information was normally included with the shipping documents. As such, a genuine issue of material fact exists.

However, as to the overall issue of Glenrock negligently failing to provide adequate warnings, Gray has failed to demonstrate that Glenrock possessed unequal knowledge regarding the Chem-Trete BSM 20. The record demonstrates through the sworn testimony of Michael Watson, an officer of Glenrock, that Glenrock had no control over the design or manufacture of Chem-Trete BSM 20 and had no knowledge of any alleged defect in the product. Our review of the record reveals that Glenrock received the Chem-Trete BSM 20 in sealed containers from Hüls and transferred the sealed containers to the end user.

As Glenrock points out, Gray's allegations that the warnings on the label and the MSDS are inadequate is of no consequence to the existence of a duty on the part of Glenrock. Gray alleged negligence against Glenrock, not strict liability. Here, Gray has failed to show that Glenrock possessed superior knowledge and consequently had a duty to warn decedent about the dangers of sawing on a drum containing flammable vapors of Chem-Trete BSM 20.

Next, Gray argues that Glenrock owed the decedent a duty to approve National Restoration as an applicator of Chem-Trete BSM 20. Gray relies on a document from Hüls which provides that Chem-Trete BSM 20 is available to "approved applicators." The document to which Gray refers, entitled "Product Data and Test Information," was issued 16 months after the decedent's fatal injury. Postevent literature cannot be used to show the standard of care. *Granberry v. Carbondale Clinic, S.C.*, 285 Ill. App. 3d 54, 65 (1996).

Also, Gray maintains that Glenrock owed the decedent a duty to certify National's knowledge of the contents of the Chem-Trete BSM 20 label and the MSDS. Ed McGettigan, an employee of Hüls, testified that Hüls did not require Glenrock to certify that Glenrock's customers were knowledgeable in the use and application of Chem-Trete BSM 20. Even if Hüls required Glenrock to certify National Restoration's knowledge of the contents of the label and MSDS, Gray failed to present any evidence which showed that Glenrock affirmatively undertook any duty to certify National Restoration's knowledge of the label and the MSDS and thereby was the proximate cause of the decedent's death.

Finally, as to the OSHA regulations that Gray alleged that Glenrock violated, the trial court's decision was improper. In its third amended complaint, Gray initially alleged that Chem-Trete BSM 20 is a hazardous chemical as defined by OSHA regulation 29 C.F.R.

§ 1910.1200(c) (2003). Gray then goes on to allege that Glenrock violated the following OSHA regulations: 29 C.F.R. § 1910.1200(f)(1)(ii) (2003), 29 C.F.R. § 1910.1200(f)(11) (2003), 29 C.F.R. §§ 1910.1200(g)(2)(iii) and (g)(2)(ix) (2003), and 29 C.F.R. § 1910.1200(g)(7) (2003). Gray also alleged that Glenrock violated these OSHA regulations in conjunction with ANSI standards Z129.1—1994 and 400.1—1993.

Glenrock cannot have violated any OSHA regulations without first having a duty to warn. We will now look at the particular OSHA regulations that Glenrock is alleged to have violated. OSHA regulation 29 C.F.R. § 1910.1200(f)(1)(ii) (2003) states:

> "[T]he chemical manufacturer, importer or *distributor* shall ensure that each container of hazardous chemicals leaving the workplace is labeled, tagged or marked with \*\*\*
>
> \*\*\*
>
> (ii) *appropriate hazard warnings*[.]" (Emphasis added.)

29 C.F.R. § 1910.1200(f)(11) (2003) states:

> "Chemical manufacturers, importers, *distributors*, or employers who become newly aware of any significant information regarding the hazards of a chemical shall revise the labels for the chemical within three months of becoming aware of the new information. Labels on containers of hazardous chemical shipped after that time shall contain the new information. If the chemical is not currently produced or imported, the chemical manufacturer, importers, distributor, or employer shall add the information to the label before the chemical is shipped or introduced into the workplace again." (Emphasis added.)

29 C.F.R. § 1910.1200(g)(7)(i) (2003) states:

> "*Distributors* shall ensure that material safety data sheets, and updated information, are provided to other distributors and employers with their initial and with the first shipment after a material safety data sheet is updated." (Emphasis added.)

29 C.F.R. § 1910.1200(g)(7)(ii) (2003) states:

> "The *distributor* shall either provide material safety data sheets with the shipped containers, or send them to the other distributor or employer prior to or at the time of the shipment." (Emphasis added.)

■ Obviously, these regulations are directed toward distributors. OSHA defines a "distributor" as: "a business, other than a chemical manufacturer or importer, which supplies hazardous chemicals to other distributors or to employers." 29 C.F.R. § 1910.1200(c) (2003). Glenrock is a distributor and therefore subject to these regulations. Therefore, Glenrock had a duty to observe these regulations.

As stated earlier, Gray raised an issue of material fact through the

deposition testimony of Watson as to whether Glenrock sent the MSDS to National Restoration as required. As such, the trial court's ruling as it pertains to these allegations was improper.

The trial court's ruling as it pertains to 29 C.F.R. §§ 1910.100(g)(2)(iii) and (g)(2)(ix) (2003) appears to be correct. Our reading of 29 C.F.R. §§ 1910.100(g)(2)(iii) and (g)(2)(ix) (2003) suggests that these regulations only apply toward chemical manufacturers and importers, not distributors. Furthermore, as to the ANSI standards which Gray alleges that Glenrock violated, these standards appear to be of a voluntary nature and not mandatory. Consequently, the trial court's ruling as to these allegations was correct.

## IV

Gray argues that the trial court improperly entered "partial summary judgment" in favor of Hüls as to certain allegations that Gray made in her second amended complaint.

In her second amended complaint, filed on February 14, 2000, Gray alleged strict liability and negligence against Hüls. Hüls filed an answer, and on June 23, 2000, Hüls filed a motion for summary judgment on the grounds that Gray's action in cutting into the drum that contained the Chem-Trete BSM 20 was not reasonably foreseeable, that Hüls had no duty to warn because the risks involved were open and obvious, and that all warnings and labels sufficiently advised of any hazards involved and complied with any and all federal regulations. Gray filed a response.

On August 2, 2000, Hüls filed a motion to withdraw sections of its motion for summary judgment on the issue of the adequacy of the warnings. On August 11, 2000, over Gray's objection, the trial court granted Hüls' motion to withdraw portions of its motion of summary judgment.

On September 13, 2000, the trial court heard arguments on Hüls' motion for summary judgment. The trial court also entered an order on September 13, 2000, providing the following, "(2) Hüls' motion is denied as to preemption, adequacy of warnings; foreseeability, open and obvious." The trial court also granted summary judgment in favor of Hüls as to certain allegations in Gray's second amended complaint as follows:

"3. Hüls' motion is granted in favor of Hüls and against [Gray] as to the following:

(a) counts IV, V and VI, paragraphs 14(a),(b),(c),(d), (of counts IV, V and VI),

(b) counts VII, VIII and IX, paragraphs 13(a),(b),(c),(d),(e),(g),(h),(i) and (j); (of counts VII [sic], VIII, and IX)

4. counts IV, V and VI, paragraphs 14(a)(b)(c)(d) (of said counts) are dismissed with prejudice; of plaintiff's 2nd amended complaint;

5. counts VIII, VII and IX, paragraphs 13(a)(b)(c)(d)(e)(g),(h)(i) and (j) are dismissed with prejudice, of plaintiff's 2nd amended complaint."

Gray contends that a certain number of paragraphs for which the trial court granted summary judgment pertained to the adequacy of the warnings and that the issue of the adequacy of the warnings was not before the trial court because the issue had been withdrawn from Hüls' motion for summary judgment. Gray is specifically concerned with the inclusion of paragraphs 14(c) and (d) in counts IV, V and VI and paragraphs 13(d) and (e) of counts VII, VIII and IX. Gray argues that the trial court's ruling is not a final and appealable order and is otherwise erroneous.

■ The order to which Gray raises her objection was a final order but not an appealable order at the time it was entered. Gray took her appeal from this order within the statutorily appropriate time after her voluntary dismissal. As such, we have jurisdiction over this issue.

On August 4, 2000, Hüls filed a motion to withdraw sections of its motion for summary judgment. In the motion, Hüls requested the court for leave "to withdraw that portion of its motion on the issue of the warning labels and material safety data sheet." The trial court granted this motion on August 11, 2000. As such, the issue of the adequacy of warnings was not before the trial court when it ruled on Hüls' motion for summary judgment and issued its order on September 13, 2000, with regard to Hüls' motion for summary judgment.

Our review of the September 13, 2000, order shows that the trial court in fact made rulings that pertained to the adequacy of warnings and contravened its previous order of August 11, 2000. In particular, the September 13, 2000, order dismissed paragraphs 14(c) and (d) of counts IV, V and VI, which state:

"(c) There were no warnings given to reasonably anticipated users of, or person who would come in contact with CHEM-TRETE BSM 20 to give notice of the highly explosive character of its vapors in violation of 29 CFR 1900.1200(f)(1)(ii).

(d) There were no warnings given to reasonably anticipated users of CHEM-TRETE BSM 20 to give notice of the nature and extent of the risk of harm from explosion when power equipment capable of producing heat or sparks is operated on or in the vicinity of CHEM-TRETE BSM 20 drums in violation of 29 CFR 1900.1200(f)(1)(ii)."

29 C.F.R. § 1910.1200(f)(1)(ii) (2003) states:

"[T]he chemical manufacturer, importer or distributor shall ensure that each container of hazardous chemicals leaving the workplace is *labeled, tagged or marked with* ***
***

(ii) appropriate hazard warnings[.]" (Emphasis added.)

This was clearly a ruling that pertained to issues that were no longer before the court, and as such, was improper. Furthermore, paragraphs 13(d) and (e) of counts VII and VIII and IX addressed the issue of adequacy of warnings. These paragraphs stated:

"(d) Carelessly and negligently failed to incorporate labeling on CHEM-TRETE BSM 20 drums which would warn users of CHEM-TRETE BSM 20 of its highly explosive character in violation of 29 CFR 1900.1200(f)(1)(ii);

(e) Carelessly and negligently failed to incorporate labeling on CHEM-TRETE BSM 20 drums which would warn users of CHEM-TRETE BSM 20 of the nature and extent of the risk of harm from explosion when power equipment capable of producing heat or sparks is operated on or in the vicinity of CHEM-TRETE BSM 20 in violation of 29 CFR 1900.1200(f)(1)(ii)."

Clearly these paragraphs also dealt with the adequacy of warnings. This was clearly erroneous. As such, we find that the trial court decision was erroneous as it pertains to these paragraphs.

V

■ Finally, Gray contends that the trial court improperly denied her motion for leave to plead punitive damages against Hüls. Gray argues that the order of September 28, 2001, was not intended to be final and that the voluntary dismissal on October 10, 2001, did not make the order appealable. Nevertheless, Gray appeals "out of an abundance of caution."

Hüls responds that the trial court's order is a final order. A judgment or order is final if it disposes of the rights of the parties, either on the entire case or on some definite and separate part of the controversy. *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 502 (1997). When the bases for recovery under the counts that are dismissed are different from those under the counts left standing, the dismissal is appealable because it disposes of a distinct cause of action. *Heinrich v. Peabody International Corp.*, 99 Ill. 2d 344, 348 (1984).

The record shows that Gray filed her motion for leave to plead punitive damages against Hüls pursuant to section 2—604.1, which provides:

"The court shall allow the motion to amend the complaint if the plaintiff establishes *** a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." 735 ILCS 5/2—604.1 (West 2002).

Gray's motion for leave to seek punitive damages is separate and distinct from her claims seeking compensatory damages from Hüls

under theories of negligence and strict liability. Strict liability and negligence are distinct causes of action because strict liability does not require proof of the defendant's fault. *Freeman v. White Way Sign & Maintenance Co.*, 82 Ill. App. 3d 884, 891 (1980). Punitive damages are not awarded as compensation, but serve instead to punish the offender and to deter that party and others from committing similar acts of wrongdoing in the future. *Loitz v. Remington Arms Co.*, 138 Ill. 2d 404, 414 (1990).

In order to plead punitive damages, Gray has the burden to show "a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." 735 ILCS 5/2—604.1 (West 2002). This burden is qualitatively different from the elements of Gray's claim for compensatory damages. Thus, the trial court's ruling disposed of Gray's rights and Hüls' regarding a definite and separate part of the case and the order was final and appealable upon Gray's voluntary dismissal of her case.

Gray has failed to sustain the burden required to plead punitive damages. Although Gray tries to show that Hüls was aware that the warnings it provided on Chem-Trete BSM 20 were inadequate, Gray relies on two cases (a civil action in the Superior Court of New Jersey, Law Division, docket No. L—39482—88, *sub nom.* Clark v. Degussa Corp. (*Clark*), and a civil action in the Superior Court of New Jersey, Law Division, docket No. L—018612—86, *sub nom.* Cicalese v. Dynamit Nobel of America (*Cicalese*)), which were irrelevant to the consideration of Hüls' role in the current case.

*Clark* concerned a completely different product that is not similar to Chem-Trete BSM 20. *Cicalese* was litigated prior to the present case and additional warnings were attached to drums of Chem-Trete BSM 20 16 months prior to the decedent's accident. The trial court properly concluded that Hüls' actions in supplying additional warnings to a hazardous product subsequent to the *Cicalese* case did not reveal an evil motive or a reckless regard for the safety of others or the degree or moral blame attached to intentional conduct that is required to support an award of punitive damages.

This case is similar to *Tyler Enterprises of Elwood, Inc. v. Skiver*, 260 Ill. App. 3d 742 (1994). There, the pharmaceutical manufacturer, Eli Lilly, sold the herbicide Balan to the plaintiff. The plaintiff melted the Balan for incorporation into its own products. Lilly instructed the plaintiff not to heat the Balan above 185 degrees Fahrenheit and the MSDS stated that Balan burns and was not to be stored near open flames. The plaintiff was heating two drums of Balan when they caught fire and destroyed the plaintiff's factory. The plaintiff brought an action against Lilly for strict liability and alleged that Lilly's conduct was wilful and wanton.

The trial court granted Lilly's motion for summary judgment on both claims and this court affirmed. This court found that "Lilly did advise Tyler not to heat the Balan above 185 degrees, the MSDS stated that Balan burns and advised not to store it near an open flame ***. In light of the above facts, we cannot conclude that Lilly acted with a conscious disregard for, or indifference to, the safety of Tyler." *Tyler*, 260 Ill. App. 3d at 753.

Gray's further contention that her motion was mooted by the filing of her fourth amended complaint is without merit. Defendants note that at the hearing on September 28, 2001, Gray actively sought a ruling on the merits of her motion and never suggested that the filing of her fourth amended complaint mooted the motion. In addition, Gray raised the issue of mootness for the first time on October 10, 2001, twelve days after her motion to plead punitive damages was denied.

Under these facts, Gray has waived the issue of mootness for review. *McMath v. Katholi*, 191 Ill. 2d 251, 255 (2000) (a party cannot complain of error which he induced the court to make or to which he consented.)

## CONCLUSION

For the foregoing reasons, the decision of the trial court is reversed in part, affirmed in part, and remanded.

Reversed in part and affirmed in part; cause remanded.

HARTIGAN, J., concurs.

PRESIDING JUSTICE CAMPBELL, concurring in part and dissenting in part:

I wholeheartedly concur with the analysis and conclusions of the majority detailed in sections II, III, and V of the opinion. However, I would affirm the judgment of the trial court in its entirety, and respectfully dissent from sections I and IV of the majority opinion.

### I

The majority concludes that the trial court erred in dismissing plaintiff's second amended complaint against National Restoration Systems, Inc., after determining that National Restoration Systems, Inc., was the decedent's immediate employer. The majority acknowledges the facts that both National Restoration Systems, Inc., and National Resurfacing, Inc., provided concrete repair, waterproofing and caulking services; are owned and operated by the same individuals, Thomas Reagan and Frank Reagan; and that the two companies

operate out of the same corporate location, 4242 Kirchoff Road, in Rolling Meadows, as one company. However, the majority states merely that "[t]he decedent worked as a laborer at the Day's Inn project" (354 Ill. App. 3d at 349), without revealing undisputed facts which show that the decedent was employed by both National entities beginning in the early 1990s.

The majority states that plaintiff filed her application for adjustment of claim against both entities, "National Resurfacing Inc. d/b/a National Restoration Systems," on October 5, 1995 (354 Ill. App. 3d at 350) and that plaintiff named National Restoration Systems, Inc., as the decedent's employer. On June 25, 1997, plaintiff filed her complaint in the circuit court of Cook County. On December 22, 1997, the trial court denied the motion to dismiss by National Restoration Systems, Inc., without prejudice, while at the same time specifically advising plaintiff that if plaintiff collected any money from National Restoration Systems, Inc., in a worker's compensation proceeding, her complaint would be dismissed.

On March 1, 2000, plaintiff and her attorney signed a two-page settlement contract entitled: "Valerie Gray, widow of William Gray, deceased vs. National Restoration Systems, Inc., a/k/a National Resurfacing, Inc.," which released all claims against the decedent's employer. The settlement agreement names the "Employer-Respondent" as "National Restoration Systems, Inc.," and the address of the employer is listed as "4242 Kirchoff Rd., Rolling Meadows, IL 60008." The settlement contract provides in pertinent part as follows:

> "Respondent, William Gray's employer, *National Restoration, Inc.*, to pay and petitioner to accept $220,000.00 in full and final settlement of any and all claims under the Worker's Compensation and Occupational Disease Acts for all accidental injuries allegedly incurred as described herein and including any and all results or developments, fatal or non-fatal allegedly resulting from such accidental injuries. Issues exist between the parties as to whether petitioner has incurred injuries to the degree alleged and whether or not such injuries are compensable, and this settlement is made to amicably settle all issues. This settlement includes [illegible] for temporary total compensation and all medical, surgical and hospital expenses, past or future, for all of which petitioner expressly assumes responsibility. All rights under §§ 4, 8, 16 and 19 of the Act are expressly waived by the parties. *** This settlement represents a full and final resolution of all issues and a compromise of any and all benefits to which the claimants may be entitled pursuant to § 7 and § 8 of the Illinois Workers' Compensation Act." (Emphasis added.)

On May 31, 2000, the trial court entered an order finding that National Restoration Systems, Inc., was, at the time of the occurrence, William Gray's immediate employer and granted National Restoration Systems, Inc.'s motion to dismiss with prejudice.

The majority here opines, however, that there remains a question of fact as to which National entity was the decedent's employer. The majority relies on *Laffoon v. Bell & Zoller Coal Co.*, 65 Ill. 2d 437 (1976), primarily for the court's final language "interpreting" section 5(a) of the Workmen's Compensation Act (formerly Ill. Rev. Stat. 1975, ch. 48, par. 138.5(a)), "as conferring immunity upon employers only from common law or statutory actions for damages by their immediate employees." *Laffoon*, 65 Ill. 2d at 447. Thus, the majority appears to conclude that even if National Restoration Systems, Inc., paid compensation benefits to plaintiff, National Resurfacing, Inc., may be sued in court by plaintiff as the "immediate" employer.

*Laffoon* is inapposite. There, the plaintiffs in three consolidated appeals were employees of subcontractors and were injured while working on sites controlled by general contractors that were separate entities from their subcontractor-employers. In all three situations, the plaintiffs' subcontractor-employers carried no compensation insurance, and the plaintiffs recovered workers' compensation benefits from the general contractors. Subsequently, the three plaintiffs filed complaints against the three general contractors alleging violations of the Structural Work Act (formerly Ill. Rev. Stat. 1975, ch. 48, par. 60 *et seq.*), and their complaints were dismissed pursuant to section 5(a) of the Workmen's Compensation Act, which provided immunity from an action for damages by an employee of an uninsured subcontractor after being required to pay compensation benefits to that employee under section 1(a)(3) of the Act.

On appeal, the Illinois Supreme Court compared the facts of the three cases to the following hypothetical situation:

> "Two men are working on a beam which suddenly collapses injuring both men. The first man is an employee of a subcontractor who has workmen's compensation insurance. This man will receive compensation benefits from his employer and may subsequently sue the general contractor—or the person 'engaging in any business or enterprise referred to in subsections 1 and 2 of Section 3 of [the Workmen's Compensation] Act' (hereinafter included under the term general contractor)—who, he maintains, is tortiously liable for his injuries. The second man is an employee of a subcontractor who carries no compensation insurance and has not 'guaranteed his liability to pay such compensation.' Under section 1(a)(3) of the Act, this man will receive compensation benefits from

the general contractor. He will be precluded, however, under defendants' interpretation of section 5(a) from maintaining a suit for damages against the general contractor even though he is liable for the employee's injuries. Moreover, the general contractor who pays benefits to the injured employee is permitted by section 1(a)(3) to recover from the subcontractor the amount paid, and, thus, may suffer no monetary loss. Plaintiffs contend that a construction of section 5(a) which allows the result illustrated creates an arbitrary and impermissible classification among injured employees." *Laffoon*, 65 Ill. 2d at 443-44.

The court reversed, finding that a construction of section 5(a) of the Act which provided general contractors with immunity from actions for damages by injured employees of a subcontractor who carries no compensation insurance would result in an arbitrary classification. *Laffoon*, 65 Ill. 2d at 445.

The facts of the present case are wholly distinguishable from those in *Laffoon*. Here, the record shows National Restoration Systems, Inc., was a subcontractor on the Days Inn project. Plaintiff here does not and cannot claim that National Restoration Systems, Inc., either failed to carry compensation insurance or that National Restoration Systems, Inc., was a general contractor that may be liable in a subsequent action under the Structural Work Act. National Restoration Systems, Inc., in fact, carried compensation insurance and paid compensation to the plaintiff in the amount of $200,000. While plaintiff has failed to allege that National Resurfacing, Inc., was uninsured, Thomas Reagan stated that both National entities were insured on the same policy of insurance by American States. Nor can plaintiff show that she can recover from National Restoration Systems, Inc., under a theory of "dual capacity."[2]

Plaintiff entered into a settlement contract that released all claims

---

[2]The case of *Murcia v. Textron, Inc.*, 342 Ill. App. 3d 433 (2003), is instructive. There, the plaintiff sought damages for injuries he sustained while operating a trim press owned by his employer, Callen Manufacturing Company (Callen). Plaintiff asserted a claim of negligence against Callen, asserting that Callen operated in a "dual capacity," both as his employer and as a "quasi manufacturer" of the trim press. The trial court dismissed the plaintiff's negligence claim as barred by section 5(a) of the Act. On appeal, this court affirmed, holding that the "dual capacity doctrine," recognized as a limited exception to the exclusive remedy provision of section 5(a), under which an employer may become liable in tort to an injured employee if, in addition to acting in its capacity as employer, it operates in a second capacity that confers upon it obligations independent of those imposed upon it as employer, did not apply. The plaintiff failed to allege any "facts to support the conclusion that,

against National Restoration Systems, Inc., and National Resurfacing, Inc. A release is presumed valid, and the party challenging the release shoulders the burden of proving any assertion of invalidity. *Brown v. Torin Corp.*, 175 Ill. App. 3d 544, 550, 529 N.E.2d 1077 (1988). Settlements between parties should not be set aside absent a showing of fraud or mistake. *Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.*, 42 Ill. App. 3d 865, 868, 356 N.E.2d 837 (1976).

Contrary to the conclusion of the majority, there exists no question of fact that the decedent was employed by National Restoration Systems, Inc. Plaintiff makes no claim of mistake or confusion as to the identity of the decedent's employer as a result of language of the settlement contract referring to "National Restoration Systems, Inc.," on page one of the settlement contract, and as "National Restoration, Inc." on the top portion of the second page. Plaintiff was well aware of the fact that National Restoration Systems, Inc., was the decedent's employer at the time of his injury and that she was entering into a settlement agreement which would extinguish her claim in the circuit court against National Restoration Systems, Inc. The record further shows that plaintiff was well aware that the two National entities operated as one, as plaintiff accepted the decedent's last paycheck written on the account of National Restoration, Inc., as well as a check for funeral expenses in the amount of $1,000 drawn on the same account.

The only rational explanation for the reference in the settlement contract to "National Restoration, Inc.," is as a "scrivener's error" which merely omitted the word "Systems":

> "[A 'scrivener'] is 'A writer; esp., a professional drafter of contracts or other documents." Black's Law Dictionary 1349 (7th ed. 1999).

A "scrivener's error" is defined as a "clerical error":

> "*clerical error.* An error resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination. ● Among the boundless examples of clerical errors are omitting an appendix from a document; typing an incorrect number; mistranscribing a word; and failing to log a call." (Emphasis added.) Black's Law Dictionary 563 (7th ed. 1999).

We cannot give the contract a construction that would render the

---

by modifying, changing or altering the press, Callen incurred obligations unrelated to those flowing from its status as an employer." *Murcia*, 342 Ill. App. 3d at 439; see also *Rosales v. Verson Allsteel Press Co.*, 41 Ill. App. 3d 787, 354 N.E.2d 553 (1976); *Ocasek v. Krass*, 153 Ill. App. 3d 215, 505 N.E.2d 1285 (1987).

phrase superfluous or meaningless; we must give it some reasonable meaning. *Huskey v. Board of Managers of Condominiums of Edelweiss, Inc.*, 297 Ill. App. 3d 292, 295, 696 N.E.2d 753 (1998).

Several Illinois cases have confronted the issue of a scrivener's error. In each instance, the correction was mechanical or technical in nature, not decisional or judgmental. See *People v. Wyzgowski*, 323 Ill. App. 3d 604, 606, 752 N.E.2d 1253 (2001) (Court found "scrivener's error" in an officer's sworn report "merely a formal defect" where the report incorrectly stated the date of arrest as July 7, 2000, as opposed to July 6, 2000); *Krilich v. Plencer*, 305 Ill. App. 3d 709, 712-13, 713 N.E.2d 231 (1999), quoting *First Bank v. Rezek*, 179 Ill. App. 3d 956, 959 (1989) (" 'The distinction between a clerical error and a judicial one does not depend upon the source of the error, but rather, upon whether it was the deliberate result of judicial reasoning and determination' "); *Dauderman v. Dauderman*, 130 Ill. App. 2d 807, 808-09, 263 N.E.2d 708 (1970) (Trial court amended the parties' divorce decree to read "$400.00 per month" rather than "$400.00." Appellate court held the failure to include the words "per month" was clearly an "inadvertent clerical error" or "scrivener's error" because the lump-sum award did not match the decree absent the language "per month"); *People ex rel. Cameron*, 214 Ill. 287, 290-91, 73 N.E. 362 (1905) (Although a legal description in a petition for the organization of a village—where the property must be contiguous—had been defective in that it referred to "the north three-fourths" instead of the "south three-fourths," a plat attached to the petition was used for the purpose of correcting the scrivener's error and giving effect to the intention of the petition); *Garrick v. Chamberlain*, 97 Ill. 620, 638 (1880) (A notice was considered valid when it described property as "lot 5, lot 23, in Carpenter's addition" instead of "lot 5, in Block 23, in Carpenter's addition" because the mistake was a typographical or a scrivener's error readily apparent on the face of a notice).

Plaintiff cannot claim ignorance as to the identity of the decedent's employer as a result of this minor typographical error, just as the majority must know the actual names of the parties notwithstanding the error in their identification at the outset of the opinion. The settlement contract acts to preclude any further recovery against National Restoration Systems, Inc.

I would further find that plaintiff is judicially estopped from claiming that the decedent was employed by National Resurfacing, Inc., rather than National Restoration Systems, Inc., and as such, plaintiff cannot maintain any further action under the Workers' Compensation Act. As stated by the majority, when a party assumes a certain posi-

tion in a legal proceeding, that party is estopped from assuming a contrary position in a subsequent proceeding. *People v. Coffin,* 305 Ill. App. 3d 595, 598, 712 N.E.2d 909 (1999). Judicial estoppel is established by fulfilment of the following five factors: (1) the party being estopped must have taken two positions; (2) the positions must have been taken in separate judicial or quasi-judicial administrative proceedings; (3) the party must have intended for the trier of fact to accept the truth of the facts alleged in support of the position; (4) the party must have succeeded in asserting the first position and received some benefit from it; and (5) the two positions must be inconsistent. *Coffin,* 305 Ill. App. 3d at 598. All of these elements are found in the present case.

Plaintiff has claimed in alternate complaints that the decedent was employed by National Restoration Systems, Inc., and by National Resurfacing, Inc. I would find that plaintiff is judicially estopped from maintaining this complaint against National Restoration Systems, Inc., as a result of the settlement agreement of her worker's compensation claim.

I would further find plaintiff barred from her current complaint against National Restoration Systems, Inc., on principles of *res judicata,* having already entered into a settlement with National Restoration Systems, Inc., and by the Workers' Compensation Act, which provides, as noted above, that once an injured employee has collected compensation under the Act, the employee cannot then allege that those injuries fall outside of the Act's provisions. 820 ILCS 305/11 (West 2002) ("Compensation as full measure of employer's responsibility"); *Collier v. Wagner Castings Co.,* 81 Ill. 2d 229, 241, 408 N.E.2d 198 (1980). I cannot conclude that the trial erred in granting the motion to dismiss of National Restoration Systems, Inc.

## II

I also dissent from section IV of the opinion wherein the majority concludes that the trial court erred in granting partial summary judgment in favor of Hüls as to four paragraphs in plaintiff's second amended complaint. In those paragraphs, plaintiff alleged various inadequacy of warnings, as detailed in the majority opinion. 354 Ill. App. 3d at 363-64. Plaintiff contends that the trial court's ruling was not a final order and is otherwise erroneous.

The record shows that on September 13, 2000, the trial court entered judgment for Hüls on paragraphs (a) through (e) and (g) through (j) of plaintiff's negligence claims, and entered judgment for Hüls on several of plaintiff's claims for strict liability. Plaintiff appealed from that portion of the order pertaining to paragraphs (d)

through (e) of the negligence claims and from the trial court's order pertaining to the strict liability claims. Plaintiff now argues that the order entered by the trial court was not final in an attempt to preemptively defeat a *res judicata* argument by Hüls in support of the dismissal of her refiled case. The record shows that the order entered by the trial court was a final order and that plaintiff failed to appeal within 30 days as required by Supreme Court Rule 303(a). 134 Ill. 2d R. 303(a). This issue is *res judicata* as to plaintiff's refiled action and I would find that plaintiff has waived this issue for review on appeal. Accordingly, I dissent.